*In re* C.A.H., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. C.H., Respondent-Appellant).

Second District  No. 2—89—0559

Opinion filed September 11, 1991.

G. Joseph Weller, Paul J. Glaser, Robert C. Cooper, and Thomas A. Lilien, all of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and William Brandstrader, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Respondent, C.A.H., a minor, appeals from the order adjudicating him a delinquent (Ill. Rev. Stat. 1989, ch. 37, par. 805—3) after finding he had committed the offense of criminal damage to property (Ill. Rev. Stat. 1989, ch. 38, par. 21—1(a)). Respondent contends that he was not proved guilty beyond a reasonable doubt because his teacher testified he was in the classroom at the time of the commission of the offense. He also contends that the trial court abused its discretion by imposing seven additional days of detention in the event respondent failed to obtain employment. We affirm as modified.

At the trial, Robin Wisner testified that on January 24, 1989, she left her house at 8:15 a.m. for school, and the door was locked. She returned around 11:30 a.m. and found the door unlocked. Water was leaking from the garage. Inside the house, eggs were on the kitchen floor, fruit cocktail was in the living room, there were holes in the drywall, her water bed was slashed, her sister's bed was slashed, and the sofa was slashed. The night before, respondent had telephoned her, talked about her friends and asked her for a date, but she refused. Edward Wisner, her father and owner of the townhouse, testified regarding other damage to the house.

Doreen Eversole testified she lived two doors down from the house. On January 24, she was walking nearby when she passed two youths walking by the Wisners' garage in the alleyway. They were wearing overcoats. She identified respondent in court as one of the two youths. A couple hours later, she noticed water streaming from the upstairs bedroom through the garage. She had seen the youths there between 11 a.m. and 11:30 a.m. She thought that was the time because that is the time when she meets the baby-sitter, but she was not quite sure.

Sharon Henson identified respondent in court. She saw him and another youth outside the premises between 10:30 and 11:30 a.m. As she went to the baby-sitter to retrieve her children, she saw them standing about the house. When one youth saw her, both youths quickly turned their backs to her. On her return from the baby-sitter,

she saw the youths enter the house through the back door. Later that afternoon she saw the water damage.

On cross-examination, Henson said she thought she saw the youths at approximately 10:30 to 11:30 a.m. At 11:30 she usually walked her son to the bus stop. She had also seen the youths that morning sometime after 9 o'clock, after she left work and after a 15- to 30-minute drive. Thus, she estimated she saw them the first time at 9:30 a.m., and then again when returning between 10:30 and 11:30. She was sure the two youths were the same as the ones she saw earlier. Upon further questioning, she denied that she hated blacks. She told respondent's investigator that she was not prejudiced but did not care for them; she had black friends. She had said that blacks were worthless people, but that by the remark she referred only to those who break into peoples' houses and cause trouble, whether they be white, black or Mexican.

Respondent called Margaret Prichard as a witness. On January 24, respondent called her at 8:40 a.m. to say he had missed the bus. She told him to arrive in class by 9:30. He arrived at 9:15, and she noted that he had arrived before 9:30. She specifically remembered the times. He stayed in her classroom until 11:30 a.m. She was his teacher for the entire period, and he never left the room or her sight. It was a half-hour walk or about three miles from respondent's neighborhood to the classroom. Most students leave on foot. She did not see him after he walked out the door.

Respondent also called David Asma, the investigator. Sharon Henson had told him she hated blacks. She did not qualify her remarks regarding their worthlessness by referring only to those who robbed houses no matter what their race. She did not refer to any other race robbing houses or being worthless.

Respondent, testifying on his own behalf, denied entering the house and denied calling Robin Wisner on the telephone the night before the incident; he had stopped talking to her a week before the incident. He lived 30 minutes from the school. He lived only a minute from the Wisner house in the next building. On January 24, he walked home after class and arrived at 12:10 p.m.

The trial court found the time frame for the occurrence of the offense very tight. It had no reason to disbelieve the testimony of Miss Prichard, but also did not find that the testimony of the Wisners, Henson or Eversole had been impeached. Henson was candid regarding her attitude regarding black people. Her testimony was otherwise very credible, as she took pains to answer every question regarding time references. She was clear and unwavering in her identification.

Eversole was also credible and not impeached. Both witnesses had the opportunity to observe the perpetrators. The court did not know when the crime occurred and stated it could not rule out the period between 8:15 a.m. and 9:30 a.m. To believe respondent, the court would have to believe that all the State's witnesses were lying. The court found no reason to believe Robin lied about receiving a telephone call from respondent in contradiction to respondent's testimony. The court concluded that the State had proved respondent guilty beyond a reasonable doubt.

At the dispositional hearing May 30, 1989, the court adjudicated respondent a delinquent. It placed him on probation until March 13, 1990. The court placed him under intensive juvenile supervision and ordered him to cooperate with that program and abide with a 7 p.m. to 7 a.m. curfew. Respondent had to attend school regularly with no unexcused absences. He and his mother were to participate in a family assessment program. The court ordered that he continue to meet with, and be available for all dates with, his advocate. The court ordered that he complete 25 additional hours of public service work. The court ordered 21 days' detention to be served *instanter*; additionally, the court gave the minor 30 days to obtain a summer job, and if he was not employed 30 days following his release from secure detention, then the minor was to serve seven additional days detention starting July 14, 1989. Respondent filed a notice of appeal pursuant to Supreme Court Rule 660 (134 Ill. 2d R. 660). *In re W.D.* (1990), 194 Ill. App. 3d 686, 700-01.

Respondent first contends that he was not proved guilty beyond a reasonable doubt. The two witnesses placed the perpetrator at the scene between 10:30 and 11:30 a.m. Eversole and Henson were credible regarding their recall of the times they were at the scene, because they could remember events occurring before and after the event and because they roughly corroborated each other. However, respondent argues they gave no indicia of reliability in their ability to recognize respondent. Eversole saw the perpetrators only in passing. The perpetrators turned away from Henson; she also said that "I don't pay no mind [sic] to people more or less. And I'm new in the area to Illinois so I don't know anybody." The opportunity to view an alleged offender is the most important factor in assessing identification. (*People v. Johnson* (1980), 94 Ill. App. 3d 200, 206.) Respondent also contests Henson's ability to make a cross-racial identification. Thus, while the two witnesses' testimony regarding the time of the incident was accurate, respondent contends their identification of respondent was not. Additionally, respondent claims he had an iron-clad alibi because he

was in class from 9:15 to 11:30 a.m. The court stated there was no reason to disbelieve the testimony of Miss Prichard. Therefore respondent argues for the court to find that the offense occurred prior to 9:15 would be implicitly holding that Eversole and Henson were wrong concerning the time, which was the very facet of their testimony the trial court used to uphold their credibility.

Respondent cites *People v. Gardner* (1966), 35 Ill. 2d 564, for the proposition that a conviction must be reversed if it rests upon identification which is doubtful, vague, and uncertain; evidence of an alibi cannot be disregarded if the only evidence contradicting it rests upon the identification of the accused as the man who committed the crime. (35 Ill. 2d at 571.) In *Gardner*, the supreme court noted that of all the factors that account for the conviction of the innocent, the fallibility of eyewitness identification ranks at the top, far above any of the others. 35 Ill. 2d at 572.

■ The weight given to alibi evidence is a question of credibility for the trier of fact, who has no obligation to accept the alibi testimony over positive identifications. (*People v. Howard* (1991), 209 Ill. App. 3d 159, 177.) The trier of fact may accept the identification testimony over the alibi testimony or determine that the two strands of testimony are not incompatible, as, for example, when the alibi testimony includes a gap in time for which the accused has not accounted. (209 Ill. App. 3d at 177.) It was not unreasonable for the trial court to determine that the offense could have been committed between 8:15 and 9:15, before respondent arrived at school. (See 209 Ill. App. 3d at 177.) Alternately, the identifications were not shown to be weak. (209 Ill. App. 3d at 177.) Eversole passed right by the youths in the alley, and she thought their presence there was unusual. Henson had the opportunity to see the youths twice, and her attention was drawn to them when they tried to turn away from her.

■ In a criminal proceeding, an accused must be found guilty beyond a reasonable doubt. (*In re A.J.H.* (1991), 210 Ill. App. 3d 65, 71.) In reviewing the sufficiency of the evidence on appeal, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261; *A.J.H.*, 210 Ill. App. 3d at 71.) The trial court has the best opportunity to observe the witnesses and evaluate their credibility. (*In re R.D.* (1991), 212 Ill. App. 3d 691, 693.) The reviewing court will not substitute its judgment for that of the trial judge on questions involving the credibility of the witnesses unless the evidence is so improbable as to raise a reasonable

doubt of the accused's guilt. (212 Ill. App. 3d at 693.) We cannot say that the trial court's determination that their identifications were credible was an unsatisfactory finding. Thus, we must affirm the adjudication of delinquency based on the commission of the offense of criminal damage to property.

■ Respondent also contends the trial court abused its discretion in ordering respondent to serve an additional seven days' detention if he was not able to obtain a job to pay the restitution. The State contends the matter is moot because the deadline for finding the job has passed and respondent did not obtain a stay pending appeal. (See *In re D.G.* (1988), 176 Ill. App. 3d 658.) However, even where the issue is moot, it should nevertheless be reviewed by this court when it involves issues of substantial public interest, is capable of repetition, and would otherwise evade review. (*In re R.D.*, 212 Ill. App. 3d at 694.) Therefore, we will review this issue.

■ Section 5—23 of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, par. 805—23) states that a court may order any minor found to be delinquent to make restitution as provided under the terms and conditions of section 5—5—6 of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6). Section 5—5—6(h) provides that no sentence to make restitution shall be revoked unless the court shall find that the offender has the financial ability to make restitution and has *wilfully refused to do so*. If the court shall find that the defendant has failed to make restitution but the failure is not wilful, the court may impose an additional period of time within which to make restitution. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(h).) The court shall take into consideration the ability of the offender to pay, determine whether restitution shall be paid in a single payment or in installments, and fix a period of time within which the restitution shall be paid in full. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(f).) These provisions are based on the constitutional prohibitions against imprisonment for debt and against imprisonment for failure to pay a fine unless the person is afforded adequate time to perform and has wilfully failed to pay. Ill. Const. 1970, art. I, §14.

Respondent contends the order is improper because it finds him in contempt *in advance* of a hearing to determine if he wilfully failed to get a job and pay restitution. Respondent argues, given a 14-year-old boy's inherent difficulty in obtaining a job, especially when he lacks skills, has a record, and has other duties under the dispositional order, that the trial court abused its discretion.

■ We agree that the trial court abused its discretion. The order does not comply with section 5—5—6 of the Unified Code of Correc-

tions because it assesses a penalty without a prior determination that respondent's inability to make restitution or to obtain a job was wilful. The State argues, based on the trial court's statements in the transcript, that the provision should be read as a condition subsequent rather than a condition precedent: that the seven-day sentence would be released if respondent obtained a job. The trial court stated that, regarding the detention, 14 days should be served pursuant to a previous dispositional order and 14 days should be served for the instant offense, but seven days would be conditional upon his unemployment. However the provision is read, the effect remains the same. Without any consideration of his efforts, respondent will serve seven days' detention if he fails to obtain a job. Thus, the trial court abused its discretion, and we must vacate that part of the dispositional order giving respondent seven additional days' detention.

For the above reasons, the order of the circuit court of Lake County is affirmed as modified by this opinion.

Affirmed as modified.

DUNN and UNVERZAGT, JJ., concur.