*In re* A.J.H., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. A.J.H., Respondent-Appellant).

Second District   No. 2—90—0132

Opinion filed March 8, 1991.—Rehearing denied April 9, 1991.

Kevin M. Kane, of Brigham, Kane & Strubbe, of Waukegan (Karen L. Brigham, of counsel), for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Respondent, A.J.H., a minor, appeals from an adjudication of delinquency (Ill. Rev. Stat. 1989, ch. 37, par. 805—3(1)) based upon a finding by the trial judge that A.J.H. committed an act of aggravated

criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(2)(i)) upon a five-year-old child for whom she baby-sat. On appeal, respondent raises the following issues: (1) whether respondent was adequately informed of the charges against her to enable her to prepare her defense; (2) whether the five-year-old complaining witness was competent to testify; (3) whether the hearsay statement of the complaining witness was properly admitted under section 115—10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10); and (4) whether respondent was proved guilty beyond a reasonable doubt of aggravated criminal sexual abuse. We reverse.

On June 19, 1989, the State filed a petition for adjudication of wardship charging respondent, a 13-year-old girl, with aggravated criminal sexual abuse. The petition alleged that, on or about a period of time from January through May 1989, respondent knowingly fondled the penis of B.H. for the purpose of her own sexual arousal. Respondent's attorney filed a motion to strike and dismiss the petition on the basis that the allegations as to the date were so vague and uncertain that she could not properly prepare a defense. Respondent's motion was denied, but a petition for a bill of particulars was permitted to be filed.

In the petition for a bill of particulars, respondent alleged that she sat for B.H. on approximately five occasions between January and May 1989, at different locations with different people being present. Respondent alleged that without more specific information, she would have to prepare defenses and witnesses to testify on her behalf for five or six separate dates of baby-sitting. The State filed a single-sentence response, alleging that the offense occurred on or about a period of time from October 1988 through May 1989, at the address of B.H.'s grandparents. At the hearing on the petition for a bill of particulars, the trial court denied respondent's request for a more specific date and granted the State's oral motion to amend the petition for adjudication of wardship, alleging that the offense occurred sometime during October 1988 through May 1989.

The trial commenced on August 25, 1989. The first witness called by the State was B.H. The trial judge asked B.H. a few preliminary questions, which required him to identify numbers and colors. The judge then asked B.H. whether he knew what it meant to tell the truth and whether he could do so in court. B.H. responded affirmatively. The trial judge stated that she would not dispense an oath at that time, but requested the State to go into some credibility issues.

The prosecutor asked B.H. what his name was, his age, his birthday, and where he lived. B.H. was able to answer all of the prosecu-

tor's questions. B.H. testified that if he did not tell the truth at home, his mother would yell at him and send him to bed; however, if he did not tell the truth at preschool, nothing would happen. B.H. said that he did not know what would happen if he told a lie to the judge.

The prosecutor then asked the trial court for B.H. to be qualified as competent to testify. The court reserved its ruling and permitted the State to examine B.H. regarding the allegations of the petition. B.H. identified respondent in court and stated that he knew her when he was three and five years old, but not when he was four years old. B.H. testified that respondent touched him where she was not supposed to while they were at B.H.'s grandparent's house. However, B.H. could not remember where respondent touched him.

The prosecutor then requested permission for B.H.'s mother to be present during B.H.'s testimony and for that testimony to take place in chambers. Because the mother was scheduled to be called as a witness, the prosecutor agreed to call her first, without B.H. being present, and then resume B.H.'s testimony afterwards in chambers. The trial court granted the prosecutor's request.

B.H.'s mother testified that she and B.H. lived with her parents until May 1989. Respondent baby-sat for her usually once a week from October 1988 until May 1989. On cross-examination, the mother testified that because B.H.'s grandfather worked midnights, he was always in the house sleeping when respondent baby-sat.

The testimony of B.H. was then continued in the judge's chambers. The prosecutor asked B.H. whether he could show on a doll what respondent did to him. B.H. indicated that he could not and refused to hold the doll. When the prosecutor asked where respondent touched him, B.H. responded that he had forgotten.

The prosecutor then asked permission for B.H.'s mother to sit next to B.H., which the trial court granted. With his mother beside him holding his hand, B.H. continued in his refusal to take the doll and indicated that he could not say where respondent had touched him. The prosecutor then asked for a continuance, which the trial court granted over respondent's objection. In granting the continuance, the trial judge noted that it was almost 5 p.m. on a Friday and B.H. had had a long day.

The trial resumed on Thursday, August 31, 1989, with the questioning of B.H. When the prosecutor asked B.H. to tell where respondent had touched him, B.H. responded "My private parts." B.H. agreed that by "private parts," he meant his penis. The prosecutor handed B.H. the doll and asked him to show what respondent did to him. The prosecutor described that B.H. put his hand under the pants

and underwear of the doll and moved his hand back and forth. Respondent's attorney stated that that was not what he saw B.H. do. The trial judge admitted that she was not sure what B.H. did, and so B.H. was asked to demonstrate it again. The judge noted that B.H. then put his thumb and middle finger in the penis area of the doll and moved them back and forth. The prosecutor then pulled the doll's pants down and asked B.H. to show where respondent had touched him. B.H. touched the penis area of the doll. The prosecutor asked B.H. to demonstrate, by touching his leg with his hand, exactly how long respondent allegedly kept her hand on his penis. The court noted for the record that B.H. did so for a time span of about four to five seconds. When asked whether respondent had said anything afterwards, B.H. stated that she had told him not to tell anyone.

On cross-examination, B.H. stated that he had not talked to anyone about his testimony since he first testified on Friday, August 25. B.H. specifically denied having met with Lake County sheriff's detective Richard Bilisko during the interim. B.H. testified that he has known respondent for seven or eight years and that she has baby-sat him for six, seven, or eight years, he did not know. B.H. admitted playing with two other children who touched his private parts. In particular, B.H. testified that a boy named Nathan, who lives across the street from his grandparents, bit him on his private part. B.H. opined that respondent was a good baby-sitter, but he stopped liking her when she tickled his private parts. B.H. did not know when respondent tickled him, but he thought it was when he was four or five years old.

At the conclusion of B.H.'s testimony, respondent moved to strike his testimony because he had not been properly qualified. The trial court denied respondent's motion.

The State then called Lake County sheriff's detective Portia Wallace to testify under an exception to the hearsay rule provided in section 115—10 of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 115—10). Wallace explained that she met with B.H. on May 23, 1989, for approximately 45 minutes. Wallace stated that she began the interview by asking B.H. various questions to establish that he knew the difference between the truth versus a lie and pretend versus reality. Wallace stated that, thereafter, B.H. told her that his baby-sitter had tickled him in his penis area. B.H. demonstrated by pulling the pants and underwear down from an anatomically correct doll and tickling the doll on its penis. Wallace testified that B.H. told her that he had his pajamas on when this happened. B.H. further told her that no one else had done that to him. Wallace testified that the interview was cut

short when she told B.H. that she was going to talk to respondent about what he said she had done; B.H. started crying and became hysterical, begging Wallace not to tell. Wallace was unable to determine from B.H. when the alleged incident occurred, except B.H. did say that it happened while he and his mother were living with his grandparents. The court then admitted Wallace's testimony over the objection of respondent.

The State's final witness was Lake County sheriff's detective Richard Bilisko. He testified that on May 18, 1989, he spoke with respondent at her school, along with respondent's assistant principal and Gay Viay, an investigator for the Department of Children and Family Services. Bilisko testified that respondent said that she had been B.H.'s baby-sitter for approximately 1½ to 2 years and that she usually baby-sat on Wednesday evenings from 6:45 p.m. to 9:30 p.m. and sometimes on Saturday. Bilisko stated that respondent had told him that when she baby-sat on Wednesday evenings, B.H. had already been bathed by his mother. After B.H.'s mother left, B.H. and respondent usually watched television until approximately 8 p.m., and respondent would then prepare B.H. for bed. Respondent explained that that included tickling games, possibly reading a book, and then putting B.H. down in his bed. Bilisko testified that respondent denied having touched B.H. on any of his private parts.

The State then rested. Respondent moved for a directed finding, which was denied.

Respondent testified on her own behalf. She stated that she is in the eighth grade and is the oldest of four children in her family. Respondent testified that she started baby-sitting for B.H. about a year ago. She stated that she usually baby-sat him at his grandparent's house, but sometimes she baby-sat him at her house. Respondent explained that she usually baby-sat on Wednesday nights and occasionally on Saturdays. Respondent stated that, when she baby-sat on Wednesday nights, she generally arrived after B.H. had already been fed, bathed, and changed into his pajamas. Respondent said that B.H. would generally play with his toys until his 8 p.m. bedtime. Respondent explained that B.H. went to bed by himself, and she would bring him in a cup of water.

When asked whether she had ever tickled B.H., respondent replied that she had once on the Saturday following February 24th while she was baby-sitting B.H. and his cousin, Timmy. Respondent testified that on that night she tickled B.H. while they were all in the living room. Respondent stated that when she did so, she tickled B.H. on his stomach area and his neck. Respondent testified that she re-

membered that incident because it was B.H.'s mother's birthday, which was the Saturday after her father's birthday. She denied having ever pulled B.H.'s pants down or having touched his penis. She stated that she had never seen B.H.'s penis.

Respondent testified that on Tuesday, August 29, 1989, after the first trial date but before the trial resumed, she saw Detective Bilisko at B.H.'s grandfather's house talking to B.H. and his grandfather.

The final witness for the defense was respondent's mother. She testified that respondent is 13 years old and is an honorable mention student. Respondent's mother stated that B.H. has visited their home two or three times since the complaint was initiated. She also stated that she saw Officer Bilisko with B.H. and his grandfather Tuesday, August 29, at B.H.'s grandparents' home.

At the conclusion of all the testimony, the trial judge stated that B.H. was credible and his testimony was clear and convincing. She then found that the State had proved its case beyond a reasonable doubt and continued the case for social evaluation and further proceedings.

The dispositional hearing was held on October 17, 1989. The trial court received several reports and a victim impact statement prepared by B.H.'s mother. The trial judge stated that she may have considered supervision in this cause, but was precluded from doing so because the State exercised a formal objection to supervision. The court then adjudicated respondent a delinquent ward of the court and placed her on a period of probation not to exceed 18 months. Respondent filed post-trial motions, which were denied. Respondent appeals.

■ We first consider the last issue raised by respondent as resolution of it may dispose of the cause. Respondent contends that she was not proved guilty beyond a reasonable doubt. Respondent argues that, when a defendant convicted of sexual abuse denies the charge, the conviction will be upheld only where the complainant's testimony is clear and convincing or where it is substantially corroborated by other evidence. (*People v. Diaz* (1990), 201 Ill. App. 3d 830, 834; *People v. Thompson* (1990), 198 Ill. App. 3d 417, 419.) The Appellate Court for the Fourth District recently rejected the application of this standard in *People v. Roy* (1990), 201 Ill. App. 3d 166, 185. The *Roy* court held that, in a case in which a sex offense is charged, the State need not demonstrate that the victim's testimony is clear and convincing or substantially corroborated in order to prove the defendant guilty beyond a reasonable doubt. (*Roy*, 201 Ill. App. 3d at 185.) The court in *Roy* explained: "The testimony of no other category of crime

victim is held to be automatically suspect or to require additional proof beyond the statutory requirements. The time has past to rid the law of this sexist anachronism." (*Roy*, 201 Ill. App. 3d at 185; see also *People v. Evans* (1990), 199 Ill. App. 3d 330, 335.) We agree.

■■ We find that there is no legitimate reason to place additional requirements on the victims of sex crimes regarding how persuasive their testimony must be. (See *People v. James* (1990), 200 Ill. App. 3d 380, 394.) Such requirements are contrary to the supreme court's recent decision in *People v. Pintos* (1989), 133 Ill. 2d 286, 291, which disapproved of a particularized definition for reasonable doubt. In *Pintos*, the court held that the reasonable doubt test as set forth in *People v. Collins* (1985), 106 Ill. 2d 237, 261, should be applied in reviewing the sufficiency of evidence in all criminal cases. (*Pintos*, 133 Ill. 2d at 291.) Under this test, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

■■ An accused commits aggravated criminal sexual abuse if she is under the age of 17 and commits an act of sexual conduct with a victim under the age of nine. (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(2)(i).) Sexual conduct is defined as "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." Ill. Rev. Stat. 1989, ch. 38, par. 12—12(e).

Respondent contends that the State failed to present any evidence regarding her alleged intent or state of mind in committing the offense. B.H. testified that respondent had touched his penis for four to five seconds and told him not to tell anyone. The State argues that one can infer from this conduct the requisite sexual intent. (*People v. Goebel* (1987), 161 Ill. App. 3d 113, 125; *People v. Allison* (1983), 115 Ill. App. 3d 1038, 1043.) In *Goebel*, the defendant, a substitute teacher, was convicted of criminal sexual abuse for touching the complainant, a nine-year-old student, on one of her breasts with his outstretched hand. This court affirmed the conviction, finding it "thoroughly reasonable to infer from such touching of a nine-year-old girl that defendant intended to gratify or arouse himself sexually." *Goebel*, 161 Ill. App. 3d at 125.

■ However, as respondent argues, it is not justified to impute the same intent into a child's action that one could reasonably impute into the actions of an adult. Here, respondent was 13 years old, and the alleged victim was five. Even accepting B.H.'s allegations as true, we cannot reasonably infer from respondent's actions that she intended sexually to gratify or arouse B.H. or herself. Without such evidence, an essential element of the crime is missing. Consequently, respondent's conviction must be reversed.

Given our resolution of the above issue, we need not address the remaining issues raised by respondent.

Reversed.

WOODWARD and NICKELS, JJ., concur.