THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY FONNEILL BILLUPS, Defendant-Appellant.

Fourth District   No. 4—99—0726

Argued November 14, 2000.—Opinion filed January 22, 2001.

Daniel D. Yuhas and Keleigh L. Biggins, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In February 1999, the State charged defendant, Larry Fonneill Billups, with two counts of aggravated battery (720 ILCS 5/12—4(b)(8) (West 1998)) and one count of domestic battery (720 ILCS 5/12—3.2(a)(2) (West 1998)). A jury convicted defendant of one count of aggravated battery but acquitted him of the other charges. In September 1999, defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied defendant's motion and sentenced him to a five-year prison term.

Defendant appeals, arguing that (1) the State failed to prove beyond a reasonable doubt that defendant committed aggravated battery, (2) defense counsel rendered ineffective assistance, and (3) the prosecutor made improper comments during closing arguments, which denied defendant a fair trial. We affirm.

I. BACKGROUND

In February 1999, the State charged defendant, Larry Fonneill Billups, with two counts of aggravated battery (720 ILCS 5/12—4(b)(8) (West 1998)) and one count of domestic battery (720 ILCS 5/12—3.2(a)(2) (West 1998)). The following evidence was presented to the jury.

In early 1999, defendant had separated from his wife, Tameka Billups. In February 1999, Tameka observed defendant and his girlfriend, Wanda Brooks, driving in defendant's car. Tameka and her cousin pursued defendant's car, honking at defendant and Wanda for ap-

proximately 10 minutes. Later that afternoon, Tameka and her sister, Brandi Thornton, met defendant as he was waiting in his car outside Wanda's residence to drive Wanda to work. Tameka and Brandi began arguing with defendant about his relationship with Wanda. According to Wanda, when she came out from her residence, Tameka, Brandi, and defendant were arguing and Brandi was brandishing an ice scraper. Brandi, however, testified that she never had an ice scraper at Wanda's residence. Tameka also testified that she did not remember Brandi's having the ice scraper at Wanda's residence.

Thereafter, defendant drove Wanda to her job; Tameka and Brandi followed. In the parking lot at Wanda's job, Tameka approached defendant on the driver's side of his car, and Brandi approached Wanda, who was sitting in the passenger's seat. Tameka opened defendant's car door and began to argue with defendant. Defendant attempted to close his door, but Tameka held the door, preventing defendant from doing so. Defendant began to push and pull the car door, attempting to break Tameka's grip from the car door. According to Tameka's testimony, Tameka then slapped defendant's face. Defendant responded by slapping Tameka across the face.

Brandi, who had engaged Wanda in a verbal confrontation on the other side of the car, saw defendant slap Tameka. In response, Brandi then walked around to the driver's side of the car. The testimony regarding the next events is in conflict.

Brandi testified that, after she saw defendant slap Tameka, Brandi went to the car that she was driving and retrieved an ice scraper. Brandi then approached defendant and hit him in the neck and back with the ice scraper.

Wanda testified, however, that Brandi already had the scraper in hand at the time that defendant slapped Tameka. Wanda claimed that, as soon as defendant slapped Tameka, Brandi hit defendant behind his left ear. Wanda never testified that Brandi retrieved the ice scraper from the car before approaching defendant.

Tameka testified that, after Brandi supposedly struck defendant with the ice scraper, defendant slapped Brandi across the face, causing Brandi to fall to the ground. Wanda then went into her workplace, and defendant left in his car.

The State called Gary Parrish as an eyewitness to the event. Parrish testified that he pulled into the gas station adjoining Wanda's workplace and noticed two cars parked in tandem. Parrish noticed two women talking to the driver of one of the cars. Parrish then saw the driver's side car door burst open and defendant jump out of the car, and the two young women began backpedaling away from defendant. Defendant shoved Tameka, causing her to fall off the curb onto the

ground. Defendant went after Brandi as she attempted to retreat. As defendant pursued Brandi, he "just hauled off and punched her with a closed fist right in the face." Defendant hit Brandi so hard that "the first thing that hit the ground was the back of her shoulders." Defendant returned to his car and drove away. Parrish immediately pulled up to the scene and offered assistance. Parrish saw Brandi get up from the ground yet never saw an ice scraper or other such object in her hand or lying on the ground around her. In fact, Parrish never observed anything in Brandi's hand during the incident.

Brandi immediately telephoned the police, and Wanda went into work. After the police arrived, Tameka and Brandi each gave the police a written statement, describing the incident. Although she spoke with the officers, Wanda refused to give a written statement. Neither Tameka nor Brandi mentioned an ice scraper in their accounts to the officer. In fact, until opening arguments at trial, no one had ever mentioned the presence or use of an ice scraper.

At trial, although the State had called Tameka and Brandi as witnesses for the prosecution, the State was forced to impeach its own witnesses with evidence of their prior inconsistent written statements to police after Tameka and Brandi testified as to new facts that aligned with defendant's self-defense theory. In response, the State produced Tameka's and Brandi's written police reports as prior inconsistent statements, highlighting the conspicuous absence of any reference to an ice scraper.

Defendant claimed self-defense as to both Tameka and Brandi. A jury convicted defendant of aggravated battery against Brandi but acquitted him of the other charges regarding Tameka. In September 1999, defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied defendant's motion and sentenced defendant to a five-year prison term. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant first argues that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Specifically, defendant argues that the jury's acquitting him of the aggravated battery against Tameka indicated that the jury found that his use of force against her was justified as self-defense. By extension, defendant argues that because his use of force against Tameka was legally justified under his self-defense theory, the jury should have found that Brandi's use of force against him was unlawful. Because Brandi unjustifiably attacked him, defendant claims that he properly used force to defend himself

against Brandi. From this, defendant concludes that the State did not prove him guilty beyond a reasonable doubt of the aggravated battery of Brandi. We disagree.

■ ■ When a defendant challenges the sufficiency of the evidence supporting his conviction, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Brooks*, 187 Ill. 2d 91, 132, 718 N.E.2d 88, 111 (1999). The trier of fact bears the responsibility of (1) determining the witnesses' credibility, (2) determining the weight given to their testimony, (3) resolving conflicts in the evidence, and (4) drawing reasonable inferences from the evidence. *Brooks*, 187 Ill. 2d at 132, 718 N.E.2d at 111. A jury need not accept or reject all of a witness' testimony but may attribute different weight to different portions of it. *People v. Cobbins*, 162 Ill. App. 3d 1010, 1025, 516 N.E.2d 382, 393 (1987). We will not substitute our judgment for that of the trier of fact on these matters. *Brooks*, 187 Ill. 2d at 132, 718 N.E.2d at 111.

■ In the present case, although Tameka, Brandi, and Wanda all testified that Brandi struck defendant first, Parrish testified that he never saw Brandi strike defendant. Instead, Parrish testified that (1) defendant burst out of the car door; (2) defendant pushed Tameka, causing her to fall to the ground; (3) Brandi attempted to retreat from defendant without striking him; (4) Brandi never held anything in her hand, including an ice scraper; and (5) after defendant pursued Brandi, he punched her in the face with a closed fist, causing Brandi to fall to the ground with her shoulders landing first. Because the trier of fact—in this case the jury—may accept or reject any or all of a person's testimony, the jury may have found Parrish's testimony more credible than that of the other witnesses and sufficient to determine defendant's action against Brandi was unlawful and unjustified.

■ To the extent that defendant implies that the verdicts are inconsistent, we disagree. Our courts have held that logically inconsistent verdicts may stand while legally inconsistent verdicts cannot. *People v. Klingenberg*, 172 Ill. 2d 270, 274, 665 N.E.2d 1370, 1373 (1996). When a jury has returned legally inconsistent verdicts acquitting a defendant of one offense and convicting him of another, the conviction must be reversed. *Klingenberg*, 172 Ill. 2d at 275, 665 N.E.2d at 1373. As a general rule, verdicts that acquit and convict a defendant of crimes composed of different elements, but arising out of the same set of facts, are not legally inconsistent. *Klingenberg*, 172 Ill. 2d at 274, 665 N.E.2d at 1373. "Legally inconsistent verdicts are verdicts where the same essential element of each crime is found to

exist and not to exist and both crimes arise out of the same set of facts." *People v. Hood*, 210 Ill. App. 3d 743, 746-47, 569 N.E.2d 228, 231 (1991).

■ Here, the State charged defendant with aggravated battery of both Tameka and Brandi. The jury convicted defendant of aggravated battery against Brandi and acquitted him of aggravated battery against Tameka. Defendant argues that an acquittal of the charge regarding Tameka required an acquittal of the charge regarding Brandi because he was defending against their initial attacks. However, the jury may have concluded based upon Parrish's testimony that defendant hit or pushed Tameka in defense against Tameka's initial attack, yet concluded that defendant pursued and struck Brandi in anger without provocation. Accordingly, the verdicts regarding each charge are neither legally nor logically inconsistent and are not subject to reversal.

## B. Ineffective Assistance of Counsel

■ Defendant next argues that his defense counsel rendered ineffective assistance by (1) failing to tender or modify certain jury instructions and (2) failing to object to the admission of Tameka's and Brandi's prior written statements. Initially, we note that defendant failed to claim ineffective assistance of counsel in a posttrial motion. Ordinarily, such a failure would result in forfeiture of the issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130 (1988); *People v. Shields*, 143 Ill. 2d 435, 446, 575 N.E.2d 538, 543 (1991). Therefore, defendant has forfeited these issues on appeal, and we need not address defendant's arguments. Nonetheless, we also reject the defendant's arguments on the merits.

### 1. *Jury Instructions*

■ Defendant claims that his defense counsel provided ineffective assistance by failing to tender a jury instruction to define "unlawful force." To claim ineffective assistance of counsel, defendant must show that his attorney's performance fell below an objective standard of reasonableness and that a reasonable probability exists that defendant was prejudiced by the performance. *People v. Edwards*, 305 Ill. App. 3d 853, 856, 713 N.E.2d 235, 237 (1999), citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Prejudice is assessed in light of the likelihood of success at trial, and if prejudice has not been demonstrated, we need not consider whether counsel's performance was deficient. *People v. Pugh*, 157 Ill. 2d 1, 14-15, 623 N.E.2d 255, 261-62 (1993).

■ In the present case, the trial court instructed the jury as to the elements of aggravated battery. The trial court further instructed the jury that a person is justified in the use of force when and to the

extent that he reasonably believes that such conduct is necessary to defend himself or another against the imminent use of unlawful force. As a result, the trial court instructed the jury as to the law regarding both the State's charges and the defense's strategy. Therefore, even absent forfeiture, defendant was not prejudiced, and his arguments to the contrary are meritless.

### 2. *Prior Inconsistent Statements*

Defendant next claims that defense counsel was ineffective for failing to object to the admission of Tameka's and Brandi's written statements in the police report as prior inconsistent statements. We disagree.

■ Defendant claims that the trial court improperly admitted Tameka's and Brandi's prior statements as prior consistent statements, effectively allowing them to bolster their testimony at trial. The record does not support this assertion.

In a discussion regarding the admissibility of these statements, the prosecutor argued that the statements "would fall under the prior consistent statement [section]." On appeal, the State claims that the prosecutor misspoke by referring to these statements as "prior consistent." Although we cannot determine from the record whether the prosecutor misspoke or the court reporter made a typographical error, the record is clear that all parties understood the statements to be prior inconsistent statements. The record reflects that defense counsel made no objection regarding the supposed misstatement. In fact, defense counsel proceeded to assist the court in finding the section concerning prior inconsistent statements. Moreover, the prosecutor, the defense counsel, and the trial court all noted the applicability of section 115—10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10.1 (West 1998)), which pertains to inconsistent statements. Therefore, no legitimate argument exists that these statements were admitted as prior consistent statements.

■ Section 115—10.1 provides for the substantive admission of prior inconsistent statements. 725 ILCS 5/115—10.1 (West 1998). Paragraphs (a) and (b) of section 115—10.1 require prior statements to be inconsistent with the offered testimony and the witness to be subject to cross-examination. The court must then determine if the statements were made either under oath at a trial, hearing, or other proceeding, such as a grand jury proceeding pursuant to paragraph (c)(1), or if they were written statements that were signed or acknowledged by the witness under oath which narrate, describe, or explain an event or condition within the personal knowledge of the witness pursuant to paragraph (c)(2). 725 ILCS 5/115—10.1(a) through

(c) (West 1998). The trial court's determination of the admissibility of evidence will not be overturned absent a clear abuse of discretion. *People v. Franklin*, 135 Ill. 2d 78, 96, 552 N.E.2d 743, 751 (1990).

In their written statements, neither Tameka nor Brandi ever mentioned an ice scraper. At trial, however, both Tameka and Brandi testified that Brandi utilized an ice scraper to attack defendant. Defendant argues that Tameka's and Brandi's in-court testimony regarding the ice scraper indicated an omission in their written statements to the officers but did not constitute an inconsistency that permitted the trial court to admit the statements under section 115—10.1. We disagree.

A determination of whether a witness' prior statement is inconsistent with his present testimony is left to the sound discretion of the trial court. *People v. Flores*, 128 Ill. 2d 66, 87-88, 538 N.E.2d 481, 489 (1989). "[A] prior statement of a witness does not have to directly contradict the testimony given at trial to be considered 'inconsistent' within the meaning of section 115—10.1." *People v. Zurita*, 295 Ill. App. 3d 1072, 1076, 693 N.E.2d 887, 891 (1998). In fact, a prior statement is inconsistent with a witness' trial testimony when it has even a tendency to contradict the trial testimony. *Zurita*, 295 Ill. App. 3d at 1077, 693 N.E.2d at 891. "Inconsistencies may be found in evasive answers, silence, or changes in position." *Zurita*, 295 Ill. App. 3d at 1077, 693 N.E.2d at 891. Moreover, "a prior statement is deemed inconsistent when it omits a significant matter that would reasonably be expected to be mentioned if true." *Zurita*, 295 Ill. App. 3d at 1077, 693 N.E.2d at 891. "The inconsistency may consist of the failure to speak of a matter entirely when it is shown that the witness had an opportunity to make a statement and that a person would reasonably be expected under the circumstances to do so." *Zurita*, 295 Ill. App. 3d at 1077, 693 N.E.2d at 891; see also *People v. Batchelor*, 202 Ill. App. 3d 316, 327-28, 559 N.E.2d 948, 956 (1990) (stating that an inconsistency can occur through a witness' omission of a particular fact that, under the circumstances, rendered it incumbent upon him to, or likely that he would, state such fact, if true; such an omission may be used to discredit his testimony as to such fact); *People v. Henry*, 47 Ill. 2d 312, 321, 265 N.E.2d 876, 882 (1970).

As we have previously stated, although the State offered Tameka's and Brandi's written statements as substantive evidence, the State also attempted to impeach Tameka and Brandi—its own witnesses—because the State believed that they had altered their stories to align with defendant's self-defense theory and facilitate an acquittal. Although they had sufficient opportunities and would have reasonably been expected to relate this fact if true, neither Tameka nor

Brandi ever acknowledged the ice scraper until trial. The State assumed that the late-breaking ice scraper story was fabricated, especially in light of Parrish's testimony that he never saw Brandi holding an ice scraper.

Moreover, the State approached the court with evidence that Tameka and Brandi were fabricating the recent remembrance of the ice scraper. The following discussion occurred outside the presence of the jury before the second day of trial:

"MR. PRIOR [(Prosecutor)]: Your Honor, I have one more issue.

THE COURT: All right. Just a second. Go ahead.

MR. PRIOR: Linnette Moore, she's Tameka's mother, she came with—to me after the trial yesterday and she said that the defendant called her the night that he was arrested and said that he was sorry for hitting both of her daughters and, et cetera, so I believe that she could be a witness.

Also, your Honor, she then[,] today she gave me this letter written from the defendant to Tameka that the mother was able to get. It was written on July 17th of this year, and in the letter the defendant asks Tameka and the sister, Brandi, to lie for him. ***

* * *

The letter is from the defendant in jail, and he's asking her and her sister to lie."

Ultimately, the trial court did not permit the State to admit the letter into evidence because defendant objected as to lack of notice. The letter, however, tended to substantiate the State's theory that Tameka and Brandi had fabricated the ice scraper story. Therefore, their prior written statements were inconsistent with their trial testimony. Even absent forfeiture, the trial court did not abuse its discretion in admitting the statements. Any objection by defense counsel regarding the admissibility of the written statements would have been properly overruled. Accordingly, defense counsel's failure to object does not constitute ineffective assistance of counsel.

## C. Prosecutorial Misconduct

Defendant finally argues that the prosecutor made improper comments to the jury during his closing argument that prejudiced the jury against him and denied him a fair trial. We disagree.

■ Every defendant is entitled to a fair trial free from prejudicial comments by the prosecution. *People v. Barker*, 298 Ill. App. 3d 751, 757, 699 N.E.2d 1039, 1043 (1998). Prosecutors, however, are afforded wide latitude in closing argument, and improper remarks will not merit reversal unless they result in substantial prejudice to defendant, in light of the context of the language used, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial

trial. *People v. Bowen*, 241 Ill. App. 3d 608, 621, 609 N.E.2d 346, 357 (1993); see also *People v. Pasch*, 152 Ill. 2d 133, 184-85, 604 N.E.2d 294, 315 (1992); *Barker*, 298 Ill. App. 3d at 757, 699 N.E.2d at 1043. Reversible error results when comments by a prosecutor substantially prejudice a defendant, causing one to question whether the guilty verdict resulted from those comments. *People v. Castaneda*, 299 Ill. App. 3d 779, 784, 701 N.E.2d 1190, 1192 (1998). "[S]tatements of counsel and argument based upon facts and circumstances proved, or upon legitimate inference drawn from them, [however,] do not exceed the bounds of proper debate." *Bowen*, 241 Ill. App. 3d at 621, 609 N.E.2d at 357. The prosecutor is free to reflect unfavorably on the defendant and comment on his action if based upon competent and pertinent evidence. *Bowen*, 241 Ill. App. 3d at 621, 609 N.E.2d at 357.

■ Initially, defendant claims that, because Tameka's and Brandi's written statements were improperly admitted, the prosecutor improperly referred to the statements during closing argument. Because we have previously concluded that these reports were properly admitted into evidence as prior inconsistent statements, the prosecutor's references to the reports were proper.

Defendant also argues that the prosecutor improperly argued that the testimony regarding the ice scraper was a total fabrication, arguing that these comments were improper and prejudicial. A prosecutor's statements in closing arguments that suggest that defense counsel fabricated a defense theory, attempted to free his client through trickery or deception, or suborned perjury are improper. *People v. Hope*, 137 Ill. 2d 430, 491, 560 N.E.2d 849, 877 (1990), *vacated on other grounds*, 501 U.S. 1202, 115 L. Ed. 2d 966, 111 S. Ct. 2792 (1991). The comments of which defendant complains were not attacks on defense counsel, however. The State was commenting on the evidence as it related to the credibility of Brandi, Tameka, and Wanda. Therefore, the State's argument was not improper. Furthermore, to the extent that these comments could be considered an attack on defense counsel, the trial court sustained defendant's objection, thereby neutralizing any prejudicial effect. *People v. Landwer*, 166 Ill. 2d 475, 499, 655 N.E.2d 848, 860 (1995); *People v. London*, 256 Ill. App. 3d 661, 664, 628 N.E.2d 621, 623 (1993).

■ Defendant also complains that the State attempted to inflame and prejudice the jury against him by repeatedly commenting on his extramarital relationship with Wanda and the fact that both Tameka and Wanda were pregnant with defendant's children at the time that the incident occurred. Again, the State was merely commenting on properly admitted evidence as tending to demonstrate why Tameka and Wanda may fabricate testimony regarding the ice scraper.

Therefore, the prosecutor's comments related directly to the credibility of the witnesses and were not improper.

■ Defendant next argues that the prosecutor improperly misstated the law regarding self-defense and expressed his personal opinion as to the validity of certain witnesses' testimony in his closing argument. Parties in closing argument may not go beyond the scope of the evidence presented and inferences therefrom, misstate the law, or express their personal opinions on the evidence. *People v. Woolley*, 178 Ill. 2d 175, 210, 687 N.E.2d 979, 995 (1997). The prosecutor stated that a person "can use reasonable force if it's necessary to defend [her]self or another." Although perhaps somewhat of an oversimplification, the prosecutor's comment was not a misstatement. In fact, the jury was properly instructed that "[a] person is justified in the use [of] force when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against the imminent use of unlawful force." Therefore, the prosecutor's comment was a correct statement of the law in this state. Moreover, even if the prosecutor had misstated the law, the trial court's administering a proper jury instruction cured the error. *Landwer*, 166 Ill. 2d at 499, 655 N.E.2d at 860; *London*, 256 Ill. App. 3d at 664, 628 N.E.2d at 623.

With regard to the prosecutor's comment on his opinion of the evidence, the defendant failed to allege any prejudicial effect. Furthermore, the trial court sustained the defendant's objection, thereby negating any potential prejudice. *Landwer*, 166 Ill. 2d at 499, 655 N.E.2d at 860.

Defendant also argues that the prosecutor improperly asked the members of the jury to place themselves in the position of the victims and consider how they would react under similar circumstances. Although the prosecutor's tactic was improper, it does not warrant reversal. *People v. Spreitzer*, 123 Ill. 2d 1, 38, 525 N.E.2d 30, 45 (1988).

Therefore, having reviewed the record, including the closing arguments, we cannot say that defendant was denied a fair trial due to the prosecutor's comments. Although we believe that some of the prosecutor's comments bordered on being inappropriate and we do not condone such questionable tactics, we conclude that they did not materially affect the verdict against defendant.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

KNECHT and COOK, JJ., concur.