*In re* DONALD R., JR., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Donald R., Jr., Respondent-Appellant).

Third District    No. 3—02—0716

Opinion filed August 29, 2003.

238

Joseph M. Borsberry, of Reynolds, Murphy & Associates, P.C., of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Dawn D. Duffy, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCHMIDT delivered the opinion of the court:

The State petitioned that the minor, Donald R., Jr., be adjudged delinquent for having committed the offenses of aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(2)(i) (West 2000)) (count I) and sexual exploitation of a child (720 ILCS 5/11—9.1(a)(2) (West 2000)) (count II). The minor's motion to suppress his confession was denied. His motions for directed verdicts were granted regarding count I, but denied regarding count II. The minor was adjudged to be delinquent based on count II and was committed to two years' probation. Additionally, he was to register as a sex offender and to obtain counseling as conditions of his probation. On appeal, the minor argues that (1) the directed verdict rulings were inconsistent; (2) his confession should have been suppressed; (3) the State failed to prove the elements of count II beyond a reasonable doubt; and (4) the terms of his probation are excessive. We affirm.

## BACKGROUND

In its juvenile petition, the State alleged that the minor committed aggravated criminal sexual abuse by having a young girl, M.Z., touch his penis and that he committed sexual exploitation of a child by exposing his penis to M.Z. Testimony during the adjudication established that the minor was 16 years old and M.Z. was 6 years old at the time of the incident.

At the adjudication on December 6, 2001, Detective Donna Nicholson testified that she was a juvenile officer with the Peoria police department. Nicholson had interviewed M.Z. on February 11, 2001. M.Z. told Nicholson that about three weeks before the interview, M.Z. was in the basement of her uncle's home when the minor came into the basement to visit the uncle. While M.Z.'s uncle was in the shower, the minor pulled his pants and underwear down past his knees and showed "his private part" to her. M.Z. said that the minor squeezed and held her hand, and made her touch "his private part." When the minor heard that the girl's uncle had finished showering, he pulled his pants up before the uncle came out of the bathroom. The minor threatened to beat M.Z. up if she told anyone what had happened. M.Z. went upstairs and told her grandparents about the incident shortly after it occurred.

At the adjudication, M.Z. testified that the minor showed her his "private." She denied, however, that the minor made her touch him. M.Z. could remember that the incident happened "kind of long ago," but could not remember exactly when it happened. She denied that the minor had threatened her. M.Z. recalled that she had told someone about the incident, but could not remember whom she told. Later, she

testified that she told a police officer about the event, but could not remember if the officer was a man or a woman.

Nicholson said that on the evening of February 21, 2001, she and Detective Terry Esser went to the minor's home in an apartment complex. The officers spoke with the minor's parents. Initially, the officers told the parents that they wanted to speak with the minor about an altercation at the high school. The parents said that the minor was not home, but would return in about 10 or 15 minutes. The officers told the parents that they would wait for the minor in the parking lot.

When the minor arrived at the parking lot, the officers placed him under arrest. Without having an opportunity to speak to his parents, the minor was transported to the police station by a third officer.

At the suppression hearing, Esser testified that he and Nicholson again spoke to the minor's parents after the minor was arrested. According to the officers, they now told the parents that the minor had been arrested for a sexual offense and was being transported to the police station. The minor's father told the officers that in the State of Indiana, parents could act as their child's attorney during police interrogation. The father asked Esser if the parents could act as the minor's attorney in this case. Esser advised the father that in the State of Illinois, parents could not act as a minor's attorney. Esser and Nicholson then left the apartment and went to the police station.

The minor's mother testified at the suppression hearing. She stated that the minor's father not only asked Esser about the parents acting as the minor's attorney, but also asked if the parents could come to the police station. According to the mother, Esser said that the parents could not come to the police station.

At the suppression hearing, Esser stated that at the police station he read the minor his *Miranda* rights and interrogated the minor for 2½ to 3 hours. At first, the juvenile denied committing the offenses. During the interrogation, Esser was joined by Detective Javier Grow, who also interrogated the minor.

Eventually, the minor admitted that he had exposed his penis to M.Z. for 15 to 20 seconds upon her request. According to Esser, the minor claimed that M.Z. told the minor that she had seen a boy's "pee-pee" at school. The minor claimed that M.Z. repeatedly asked to see his "pee-pee" and he only exposed himself in order to quiet her. The juvenile, however, denied that M.Z. voluntarily touched his penis or that he placed her hand on his penis.

At the suppression hearing, the minor testified that he only admitted exposing himself to M.Z. because Esser made a promise of leniency and Grow threatened him. Esser and Grow, however, stated that they neither threatened the minor nor promised him leniency.

The minor said that he asked Esser if his parents were going to come to the police station, to which Esser replied that they were not coming. The juvenile submitted that he asked "towards the end" of the interrogation if he could talk to his parents. The issue "was left open," but then he did not speak to them. Both Esser and Grow testified that the minor did not ask for his parents to be present either before or during the interrogation. On cross-examination, the minor acknowledged that he had experience with the police from previous juvenile adjudications for retail theft and burglary.

Regarding the motion to suppress, the trial judge found that the minor had not been threatened or promised leniency by the police. The judge also found that the minor did not ask to speak to his parents before or during the interrogation. Additionally, the judge found that even if the father implied that he wished to be present during his son's interrogation, it was the minor rather than the parent who must ask for the parent to be present during the interrogation. The judge denied the minor's motion to suppress the confession.

The remaining testimony at the adjudication was substantially similar to the testimony at the suppression hearing. In separate motions, the minor moved for directed verdicts on counts I and II. Regarding the aggravated criminal sexual abuse charge, the trial judge stated that, in another case in which he was the trial judge, this court had ruled in an unpublished order that circumstantial rather than direct evidence of acting for the purpose of sexual arousal was insufficient in a juvenile case. The judge noted that the unpublished case from this court cited two published cases from the Illinois Appellate Court, Second District, which are *In re E.R.E.*, 245 Ill. App. 3d 669, 614 N.E.2d 1367 (1993), and *In re A.J.H.*, 210 Ill. App. 3d 65, 568 N.E.2d 964 (1991). The judge stated that even though he disagreed with these rulings, he was bound to follow our unpublished case and the two Second District cases. He ruled that because the State only presented circumstantial evidence of the *mens rea* element, he must grant the minor's motion for a directed verdict on count I.

The judge, however, noted that his research had uncovered no case law concerning the sexual-exploitation-of-a-child offense. The judge, therefore, denied the minor's motion for a directed verdict on count II. The minor was adjudicated delinquent and was committed to probation with conditions. His motion to reduce the sentence was denied and he appealed.

## ANALYSIS

### I. Inconsistent Verdicts

The minor argues that the trial court's directed verdict rulings

were inconsistent. Specifically, he contends that the court was inconsistent by ruling that he did not act for the purpose of sexual arousal concerning count I, but did act for the purpose of sexual arousal concerning count II. According to this court's research, our consideration of the sexual-exploitation-of-a-child offense is a matter of first impression in Illinois.

A person commits aggravated criminal sexual abuse if he was less than 17 years of age when he committed an act of sexual conduct with a victim who was less than 9 years of age when the act was committed. 720 ILCS 5/12—16(c)(2)(i) (West 2000). Sexual conduct is defined as any intentional or knowing touching of the sex organ of the accused for the purpose of the sexual gratification or arousal of the victim or the accused. 720 ILCS 5/12—12(e) (West 2000).

A person commits sexual exploitation of a child if the person intentionally or knowingly exposes his sex organ to a child for the purpose of the sexual gratification or arousal of the victim or the accused. 720 ILCS 5/11—9.1(a)(2) (West 2000).

Illinois courts have held that logically inconsistent verdicts may stand but legally inconsistent verdicts must be reversed. Verdicts are legally inconsistent where the same element is found to exist and not to exist for crimes that arise from the same set of facts. *People v. Billups*, 318 Ill. App. 3d 948, 742 N.E.2d 1261 (2001).

In the present case, the minor submits that the trial court's directed verdicts were inconsistent. However, he does not specify whether he believes the verdicts were legally inconsistent or logically inconsistent. Although count I and count II shared the same *mens rea* element, these offenses arose from different facts. The facts of count I involved touching, while the facts of count II concerned exposure. Therefore, the verdicts were not legally inconsistent. Alternatively, assuming that the minor's argument is that the verdicts were logically inconsistent, such an inconsistency is not a basis for reversal. See *Billups*, 318 Ill. App. 3d 948, 742 N.E.2d 1261.

Because this is a case of first impression, we feel it necessary to distinguish our ruling from the rulings in *E.R.E.* and *A.J.H.* concerning whether circumstantial evidence can be used to prove that a juvenile offender acted for the purpose of the offender's sexual gratification or arousal.

The *mens rea* element of a crime rarely can be proved by direct evidence. *People v. Sanchez*, 292 Ill. App. 3d 763, 686 N.E.2d 367 (1997). The *mens rea* element ordinarily is inferred from circumstantial evidence. *People v. Price*, 225 Ill. App. 3d 1032, 589 N.E.2d 192 (1992); *People v. Holt*, 271 Ill. App. 3d 1016, 649 N.E.2d 571 (1995). Whether a defendant acted with the requisite state of mind is for the trier of fact

to determine. An appellate court shall not substitute its judgment for the judgment of the trier of fact, unless that judgment was inherently implausible or unreasonable. *Price*, 225 Ill. App. 3d 1032, 589 N.E.2d 192.

In both *E.R.E.* and *A.J.H.*, a juvenile was accused of committing aggravated criminal sexual abuse. In *E.R.E.*, the accused was 12 years old and the alleged victim was 6 years old. In *A.J.H.*, the accused was 13 years old and the alleged victim was 5 years old. In both cases, the juveniles denied committing the offenses. In *E.R.E.* and *A.J.H.*, the court held that circumstantial evidence may not be used to infer the same state of mind from the actions of a child as one reasonably could infer from the actions of an adult. *E.R.E.*, 245 Ill. App. 3d 669, 614 N.E.2d 1367; *A.J.H.*, 210 Ill. App. 3d 65, 568 N.E.2d 964.

The facts of the instant case are distinguishable from the facts of *E.R.E.* and *A.J.H.* In the present case, the accused was 16 years of age rather than 12 or 13. Furthermore, the minor in this case confessed to the *actus reus* of the crime, where the minors in *E.R.E.* and *A.J.H.* denied committing the act.

■ We decline to extend the holdings of *E.R.E.* and *A.J.H.* to the present case. We rule that it was not inherently implausible or unreasonable for the trier of fact to infer from the circumstantial evidence that the 16-year-old male minor exposed his penis to the 6-year-old female victim for the purpose of the minor's sexual gratification or arousal.

As Justice Holdridge points out in his special concurrence, the State cannot appeal the trial court's order directing a verdict on count I. Nonetheless, we feel it important here to note that the trial judge erred when he stated he was bound in this case by a previous unpublished order from another case. We do so because we are seeing this with some regularity. There is nothing ambiguous about Supreme Court Rule 23(e), which provides that an unpublished order of the appellate court is not precedential. 166 Ill. 2d R. 23(e). It is error for a trial court to rely on an unpublished order of the appellate court other than in those cases involving double jeopardy, *res judicata*, collateral estoppel, or law of the case. *People v. Petty*, 311 Ill. App. 3d 301, 724 N.E.2d 1059 (2000). Since Supreme Court Rule 23 orders have no precedential value, advocates may not cite or refer to them except within the above-stated limited areas. Regardless of whether it is a civil or criminal case, a fundamental unfairness results when a trial court, *sua sponte*, relies on an unpublished order in reaching its decision.

We appreciate the fact that trial judges do not like to be reversed by the appellate court. Nonetheless, fear of reversal does not justify reliance on an unpublished order. The rationale should be obvious.

How does an attorney represent his client when the trial court bases its decision on "authority" of which the trial attorneys are totally unaware or on which, even if they are aware, they cannot rely? The bar and the public have some serious and sometimes legitimate concerns over abuses and injustices, either real or perceived, associated with disposing of cases by unpublished orders. Based on trial court records we have reviewed, we are troubled by the increasing frequency of trial courts relying on unpublished Rule 23 orders and therefore take this opportunity to condemn the practice.

## II. Motion to Suppress

The minor submits that his confession should have been suppressed because his parents were not allowed to come to the police station and were not allowed to be present during his interrogation.

The ruling of a trial court on a motion to suppress frequently presents mixed questions of fact and law. The trial court's findings of fact will not be disturbed unless they are manifestly erroneous. Concerning questions of law, the ruling of the trial court is subject to *de novo* review. *People v. Simac*, 321 Ill. App. 3d 1001, 748 N.E.2d 798 (2001).

In determining whether a juvenile's confession was voluntary, an appellate court must consider the totality of the circumstances. Factors to be considered include the respondent's age, intelligence, background, experience, mental capacity, education, and physical condition; the legality and duration of the detention; the duration of the questioning; and any physical or mental abuse by the police, including any threats or promises. Another factor to consider is whether the juvenile was denied the opportunity to confer with a parent before or during the interrogation. This is particularly true when the juvenile had difficulty understanding the interrogation process, he asked to speak with his parents, or the police prevented the juvenile's parents from speaking with him. However, no single factor is dispositive. *In re G.O.*, 191 Ill. 2d 37, 727 N.E.2d 1003 (2000).

In the instant case, we consider the totality of the circumstances of the minor's confession. The minor was an older juvenile who displayed no difficulty understanding the interrogation process. He was familiar with the process from previous juvenile adjudications. The trial judge found that the police did not threaten him or promise him leniency. The judge also found that the minor did not ask for his parents to be present before or during the interrogation. The court found that the father only implied that he wished to be present during his son's interrogation. Even so, this factor does not weigh against the totality of the other circumstances under which the minor gave his voluntary confession.

The trial court's factual findings were not against the manifest weight of the evidence. We rule that the trial court did not err as a matter of law by denying the minor's motion to suppress his confession.

### III. Reasonable Doubt

The minor contends that the State failed to prove the elements of count II beyond a reasonable doubt. He argues that M.Z.'s testimony was neither competent nor credible.

The standard of review in a challenge to the sufficiency of the evidence is whether, when considering all of the evidence in the light most favorable to the State, a rational fact finder could have found the elements of the offense proved beyond a reasonable doubt. *People v. Harris*, 333 Ill. App. 3d 741, 776 N.E.2d 743 (2002).

Assessing the credibility of witnesses and the weight to be given their testimony are functions of the trier of fact. The fact finder is to resolve any conflicts in testimony. *In re Matthew M.*, 335 Ill. App. 3d 276, 780 N.E.2d 723 (2002).

In this case, it was for the trial judge as fact finder to determine the weight and credibility to give M.Z.'s testimony. It also was for the trial judge to resolve conflicts in the testimony of M.Z., Nicholson, and the minor.

A rational fact finder could have found beyond a reasonable doubt that the minor intentionally or knowingly exposed his sex organ to M.Z. The fact finder reasonably could have inferred that the minor committed the act beyond a reasonable doubt from M.Z.'s testimony, Nicholson's admissible hearsay testimony concerning what M.Z. had told Nicholson, and the minor's confession. As we ruled above, a fact finder reasonably could have inferred from the circumstantial evidence that the minor had the requisite state of mind. Therefore, taking the evidence in the light most favorable to the prosecution, we hold that a rational fact finder could have found beyond a reasonable doubt that the minor committed the offense of sexual exploitation of a child.

### IV. Excessive Terms of Probation

The minor argues that the terms of his probation are excessive. He submits that juvenile sex offenders should not be required to register as sex offenders. He also contends that two years' probation and counseling are excessive.

Recently, the Illinois Supreme Court ruled that minors who have been adjudged to be delinquent for having committed sex offenses must register as sex offenders. *In re J.W.*, 204 Ill. 2d 50 (2003). Therefore, registration as a sex offender was not an excessive condition of probation.

■ In his brief, the minor cited to authority regarding registering as a sex offender, but he did not cite to authority concerning whether two years' probation and counseling are excessive.

Supreme Court Rule 341(e)(7) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001) requires an appellant to cite authority in support of an issue on appeal. An argument without citation to authority is deemed waived. *People v. Davis*, 335 Ill. App. 3d 1, 779 N.E.2d 443 (2002).

Because the minor cited no authority for the propositions that two years' probation and counseling are excessive, these issues are deemed waived and we need not consider them.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Peoria County circuit court.

Affirmed.

JUSTICE HOLDRIDGE, specially concurring:

I concur in the result of the court's order but write separately to make the following observations.

The trial judge erred in ruling that circumstantial evidence could not establish the *mens rea* element for aggravated criminal sexual abuse but could establish the *mens rea* element for sexual exploitation of a child. The elements are the same despite their location in different offenses. In cases like *In re E.R.E.*, 245 Ill. App. 3d 669 (1993), and *In re A.J.H.*, 210 Ill. App. 3d 65 (1991), the primary concern is that children may have noncriminal reasons (*e.g.*, adolescent curiosity) for engaging in conduct involving sex organs. That concern exists regardless of whether the conduct involves touching (sexual abuse) or exposure (sexual exploitation). Thus, the judge's distinction was unfounded.

Although the State cannot appeal the judge's order directing a verdict on count I (188 Ill. 2d R. 604(a)(1)), the order may very well have been erroneous. The respondent in *E.R.E.* was 11 to 12 years old, and the respondent in *A.J.H.* was 13 years old. Sexual conduct by such minors is more apt to be innocent than similar conduct by older minors like Donald R. (16 years old). Regarding pursuit of sexual gratification or arousal, the difference between ages 11 to 13 and age 16 is considerable. Admittedly the courts in *E.R.E.* and *A.J.H.* simply mentioned children in general; however, those cases must be interpreted according to their facts. The policy behind the rule against circumstantial evidence applies differently to respondents of different ages and

maturity levels. These facts illustrate the need for a case-by-case approach instead of an inflexible rule that supposedly applies the day before a minor reaches majority but not the day afterward.

Finally, regardless of the directed verdict on count I, the State's evidence was sufficient to sustain Donald R.'s conviction for sexual exploitation of a child (count II). In addition to the mere fact that Donald R. exposed his penis to the victim, the State presented evidence that he proceeded to grab the victim's hand and place it on his penis. The State also presented evidence that he threatened the victim to prevent disclosure of the act. The trier of fact could have reasonably inferred from this evidence that Donald R. acted for the purpose of sexual gratification or arousal rather than something more benign like adolescent curiosity.

JUSTICE SLATER, dissenting:

I respectfully dissent because I believe the minor's confession was made only as a result of illegal coercive questioning by the police. It should have been suppressed.

The police falsely represented to the minor's parents that he was to be questioned about "an incident at the high school." After learning the minor was not home, the police waited for the minor and intercepted him in a parking lot before he could reach home and his parents. He was immediately arrested and transported to the police station. The parents were denied access to their son during his questioning at the police station despite the fact that they wanted to be present.

The majority assumes that this 16-year-old, because he has previous juvenile adjudications for theft and robbery, is familiar with the interrogation process. Prior adjudication does not necessarily equate to an intimate knowledge of police methods used to obtain confessions. A 2½- to 3-hour interrogation normally constitutes more than casual conversation between the interrogators and the interrogated. The minor claims that the police officers offered to let him go home to his parents if he confessed.

Our supreme court has recognized that, because the taking of a juvenile's confession is "a sensitive concern," the greatest care must be taken to assure that the confession was not coerced, suggested, or the product of adolescent fantasy, fright or despair. *In re G.O.*, 191 Ill. 2d 37, 54, 727 N.E.2d 1003, 1012 (2000). Because of a juvenile's extreme vulnerability to coercive police tactics, "[c]ourts have repeatedly held that police conduct that frustrates a parent's attempts to confer with his child prior to or during questioning is significant in determining the voluntariness of a confession." *In re L.L.*, 295 Ill.

App. 3d 594, 601, 693 N.E.2d 908, 914 (1998). Here the police "ambushed" the minor in the parking lot of his home and then, at a minimum, discouraged his parents from attempting to see him.

Under the totality of the circumstances, it is my view the minor's confession was not made voluntarily.