James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Jane M. McSoley and Teresa M. Rusbino, Sp. Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

**STATE**

v.

**Robert BROWN.**

**No. 89–610–C.A.**

Supreme Court of Rhode Island.

Feb. 19, 1991.

OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the defendant's appeal from a conviction of second-degree child-molestation sexual assault. We reverse and remand for entry of a judgment of acquittal.

On November 1, 1986, the Child Abuse Hotline of the Department for Children and Their Families (DCF) received an anonymous telephone call concerning a possible

sexual assault perpetrated on Suzannah,[1] then aged six. This telephone call prompted an investigation by a child-protective investigator at DCF. The investigator immediately spoke with Suzannah's mother at her residence. He explained to her that a report had been received that her daughter may have been sexually assaulted. The mother indicated to him that Suzannah, after watching a television program about sexual abuse of children, had told her that two uncles (brothers of the mother), had digitally penetrated her, each on a separate occasion about a year previously. This disclosure conformed to the information given DCF by the anonymous telephone caller.

The investigator and the mother then went to Suzannah's father's home, where Suzannah was visiting, so that the investigator could interview the child. He interviewed her privately for about fifteen minutes. Suzannah alleged that Roger and Robert had inserted their fingers into her "private areas."

The DCF investigator immediately brought the child to a local hospital for a physical examination. The doctor there advised the investigator that the child showed no physical evidence of trauma and that the doctor herself believed nothing had happened to Suzannah. Despite the doctor's findings, the investigator requested that the mother remove Roger from her household. Roger at that time was living with the mother and Suzannah. The mother refused, whereupon the investigator placed Suzannah in forty-eight-hour protective custody.

The investigator next traveled with the mother and Suzannah to the Portsmouth police station. He requested that the mother file a sexual-assault complaint against Roger and Robert, and she refused. He thereafter filed the sexual-assault complaint against Roger and Robert, which led to both men's being charged with second-degree child-molestation sexual assault.

The defendant, Robert Brown, and his brother, Roger Brown, were each charged in indictment No. 1/87–0068A. Count 1 of the indictment charged Robert Brown with engaging in sexual contact between November 1, 1985 and December 1, 1985 with a child under thirteen years of age in violation of G.L.1956 (1981 Reenactment) §§ 11–37–8.3 and 11–37–8.4, both sections enacted by P.L.1984, ch. 59, § 2. Count 2 charged Roger Brown, his brother, with committing the same violation on or about the twenty-fourth of December 1985.

Before trial, Robert moved to sever his case from that of his brother. Robert argued that since he and his brother were not alleged to have participated in the same series of acts or transactions constituting the criminal offense, they were improperly joined under Rule 8(b) of the Superior Court Rules of Criminal Procedure. He argued that he would suffer prejudice from being tried together with his brother.

Rule 8(b) reads:

"Joinder of Defendants. Two (2) or more defendants may be charged in the same indictment, information, or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

Robert's attorney argued that there was no commonality of action and that the alleged actions of the two defendants were entirely separate and distinct episodes. Roger Brown, the brother and codefendant, moved to sever, also arguing the danger of prejudice that could arise if these defendants were tried together.

In denying the motion to sever, the trial justice acknowledged that the offenses charged were separate incidents. However, he viewed as overriding considerations the common victim who was a child of five at the time the alleged offenses occurred, as well as the interests of judicial economy. It would appear that the trial justice considered the motion to sever as one addressed to his discretion under Rule 14 rather than for severance as a matter of

---

1. We shall use the name Suzannah for purposes of anonymity.

right under Rule 8 because of a misjoinder. The trial justice observed that he was confident he could cure any prejudice that might arise to either defendant from the joint trial. He was not, however, the trial justice who presided over the trial.

The state's primary witness was Suzannah, the purported victim, who was eight years old at the time of trial. Suzannah testified to remarkably similar, although separate, instances of sexual contact with Roger and Robert. Significantly, her allegations at trial differed greatly from her earlier allegations of digital penetration made to the DCF investigator.

Suzannah testified that on Christmas Eve 1985 she and her mother attended a party at the home of her mother's friend. Upon returning from the party, Suzannah changed into her pajamas and went to bed. It appears that Roger and his son, R.J., were sharing another bed in the same room that night. Suzannah testified that during the night she dreamed that Roger touched her. She used a doll to demonstrate that this touch occurred between her legs, although she was unable to state whether the touch was on top of or under her clothing. Suzannah testified that the touch lasted for "a second," that Roger did not move either his hands or his fingers, and that neither she nor Roger spoke during the incident. Suzannah also testified not only that she could not remember seeing Roger leave his own bed, but that Roger was in his own bed when she awoke as well. When questioned about whether this incident could actually have happened, Suzannah replied, "Maybe, I don't think so."

Suzannah also testified at trial that one night between Halloween and Thanksgiving in 1985 she was alone in her mother's trailer with Robert. Suzannah testified that she had prepared for bed by changing into a T-shirt, nightgown, and underpants. She had been watching television for about an hour while on the couch when "I was falling asleep and Uncle Robby touched me." Suzannah then used a doll to demonstrate that the touch had occurred on top of her clothing in the area between her legs. Her testimony on cross-examination

confirmed that the touch had been on top of her clothing. Suzannah also testified that the touch was only for "a second or two," that it had occurred only once, and that Robert made no movements with either his hand or his fingers. Finally Suzannah testified that neither Robert nor she had said anything, although afterward she ran into the bathroom and locked the door. Suzannah could not explain why she chose to lock herself in the bathroom.

During the testimony, particularly the cross-examination of Suzannah, the prejudice to Robert from the misjoinder of these offenses became obvious. Roger's attorney had cross-examined her first, and she ended her testimony about Roger by saying that she thought the incident involving Roger was all a dream, that it could actually have happened but that she did not think so.

Robert's attorney attempted to impeach Suzannah with the fact that she had originally accused Roger of digitally penetrating her then changed to a claim that he sexually touched her and then said that it all might have been a dream. The state's attorney informed the trial justice that he had no objection to that line of cross-examination, but Roger's attorney objected on the ground that it was improper to allow Robert's attorney to question Suzannah about allegations she had made about Roger. The trial justice refused to allow Robert's attorney to cross-examine Suzannah about her allegations about Roger although he acknowledged that her testimony in court was vastly different from her testimony before the grand jury, that her original version of what occurred involved sexual penetration, not just touching, and that the testimony was relevant. The trial justice ruled that Roger's attorney had already cross-examined on that point and that that examination was sufficient. Robert's attorney could not pursue it.

The same difficulty arose during Robert's attorney's cross-examination of the DCF investigator who had originally interviewed Suzannah. When the investigator began to testify about allegations the child had made about both defendants, Roger's

attorney's objections were sustained. Robert's attorney made an offer of proof of what he would show regarding discrepancies between her testimony and her original allegations against Roger. The trial justice ruled that although the testimony was relevant, its effect would be cumulative in conjunction with Roger's attorney's cross-examination and it would be improper in the light of the codefendant's status in the case.

In response to the dilemma with which he was faced, the trial justice attempted to limit Roger's final argument. He ruled that Roger's attorney was not allowed to argue that Suzannah's dream of Roger's assault on Christmas Eve was possible because of Robert's alleged assault one month before. However, Roger's attorney succeeded in suggesting the same to the jury by arguing in part:

"and of course, it was a bad dream to her, and, if you will recall she broke down and cried. It's traumatic, it's a bad dream. It's a nightmare of some sorts to her. What caused the nightmare. That's up to you, ladies and gentlemen to decide."

The obvious cause suggested by this argument was what she alleged Robert had done a month before. The jury acquitted Roger but convicted Robert on the charge of second-degree child-molestation sexual assault. Robert now appeals his conviction to this court.

∎ We must conclude that the joinder for trial of these two defendants, each charged with separately and independently committing sexual assault on their niece, was error because it resulted in Robert's being restricted in his ability to defend himself. When substantial prejudice results from a denial of a motion to sever, a defendant is entitled to relief. *State v. Cassey*, 543 A.2d 670 (R.I.1988); *State v. Bernier*, 491 A.2d 1000 (R.I.1985); *State v. Whitman*, 431 A.2d 1229 (R.I.1981). The denial of the motion to sever gave the justice who presided at the trial a virtually impossible task. Unlike the situation in *State v. Sharbuno*, 120 R.I. 714, 390 A.2d 915 (1978), and *Whitman*, this defendant

has been able to show actual prejudice rather than a mere potential for prejudice. Because of the obvious disadvantage Robert suffered, he would be entitled to a new trial in the ordinary course of events.

Robert was charged with second-degree child-molestation sexual assault as defined by G.L.1956 (1981 Reenactment) § 11–37–8.3, as enacted by P.L.1984, ch. 59, § 2. This statute prohibits any person from engaging in sexual contact with another person thirteen years of age or younger. The term "sexual contact" is defined as:

"[T]he intentional touching of the victim's or accused's intimate parts, clothed or unclothed. If that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification or assault." Section 11–37–1, as amended by P.L.1984, ch. 152, § 1.

∎ Robert argues that the evidence presented at trial was insufficient to convict him of second-degree child-molestation sexual assault because the evidence could not show beyond a reasonable doubt that the touch had been for the purpose of sexual arousal or gratification. There is no evidence of conduct or conversation on the part of defendant, either before or after the alleged touch, from which a jury could conclude that the touch as described by the child was for sexual arousal, gratification, or assault as required by the act.

In reviewing the trial justice's ruling on defendant's motion for a judgment of acquittal, we, like the trial justice, must view the evidence in the light most favorable to the state, drawing all reasonable inferences favorable to the state. *State v. Rossi*, 520 A.2d 582, 584 (R.I.1987). Having done so, we believe that the evidence presented at trial shows, at the most, an ambiguous touch from which a jury would have to speculate to find, beyond a reasonable doubt, that its purpose was for sexual arousal or gratification. Thus we believe defendant's motion for a judgment of acquittal should have been granted.

The state argues that the evidence in the record before us is analogous to the facts presented by *Rossi*. There the victim testi-

fied that Rossi had removed her clothes, exposed his penis, and with it made contact with her vaginal area. *Id.* at 583. In our opinion there is no analogy to be drawn between the two cases. Here we have a singular incident of a momentary touch on top of a child's clothing. The child's testimony revealed no movement of the hand or fingers, and no words were spoken. A comparison of the facts in these two cases serves to support our conclusion. The comparison emphasizes the utter lack of evidence that suggests that the touch was for the purpose of sexual arousal or gratification.

For these reasons the defendant's appeal is sustained, the judgment of conviction is reversed, and the case is remanded to the Superior Court with directions that a judgment of acquittal be entered.