In re Kyle A.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Kyle A.                          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Flaherty, for the Court.**  The respondent, Kyle A., appeals from an adjudication that he was delinquent for engaging in second-degree child molestation sexual assault in violation of G.L. 1956 § 11-37-8.3.  The respondent also was ordered to register as a sex offender.  On appeal, the respondent argues that there was insufficient evidence to support the trial justice's finding that he touched the complainant for the purposes of sexual gratification and, therefore, it was error to adjudicate him to be delinquent.  The matter came before us on December 9, 2015, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not summarily be decided.  After considering the parties' oral and written arguments and examining the record, we are of the opinion that cause has not been shown and that this case can be decided without further briefing or argument.  For the reasons given below, we affirm the adjudication of the Family Court.

## Facts and Travel

During a one-day bench trial that took place before a justice of the Family Court on June 3, 2014, the state presented four witnesses: the complainant, respondent's sister Molly, East Providence Det. Mark Jones, and Dr. Christine Barron.[1] The respondent did not testify, nor did he call any witnesses.

Erin, the complainant, testified that during the summer of 2013 she, then thirteen, was a friend of Molly and her fifteen-year-old brother, Kyle. Erin said that when she stayed overnight at Molly's house, the pair would sleep either in Molly's bedroom or on the living room couch. One day that summer, Erin and Molly spent the day swimming in Molly's backyard pool. Around eleven or twelve that night, Erin and Molly relaxed on the living room couch while watching television before falling asleep a couple of hours later. However, Erin's sleep was interrupted twice that night by Kyle, who had been with the girls in the living room earlier that evening. While she was sleeping on the couch, Erin awoke and noticed that Kyle was standing over her and that he was "reaching." Although he did not touch her, Erin was troubled by respondent's presence and told him to go away because she was trying to sleep. Erin said that, after respondent left, she pulled the blanket back over her and went back to sleep.

Erin awoke about two hours later to find Kyle standing over her again. This time, however, she felt Kyle's hand under her blanket and shorts, touching her vagina over her underwear. Erin pushed Kyle away and told him to get away from her. According to Erin, Molly also woke up at this point and told her brother to stop bothering them. Kyle left the room and did not return for the rest of the night. Erin did not tell Molly what had happened until the

---

[1] We use pseudonyms to protect the privacy of complainant and respondent's sister.

following day. According to Erin, Molly said that she would tell her mother about the incident. Erin, however, said that she did not report the incident to anyone, including her own mother, because "she didn't want anyone else to know."

Nevertheless, the incident came to light at the end of that summer. On July 31, Dr. Christine Barron met with Molly at the Aubin Child Protection Center at Hasbro Children's Hospital.[2] During that meeting, Molly told Dr. Barron about the incident that had occurred between Kyle and Erin. Molly told Dr. Barron that Erin had been sleeping at her house and she awoke to find her brother leaning over Erin, touching her in her genital area. According to Dr. Barron, Molly told her that she actually saw the incident and that Erin had asked her not to tell anyone because she was afraid to disclose what had happened. Doctor Barron reported what Molly had revealed to her to Det. Mark Jones of the East Providence Police Department. The ensuing investigation ultimately led to respondent's arrest and subsequent finding of delinquency.

However, when Molly testified, she was somewhat reticent about the details that she shared earlier with Dr. Barron. According to Molly, respondent did "not really" hang out with her and Erin and he usually slept in his own room when Erin spent the night. She also denied telling Dr. Barron that she had seen her brother touch Erin. Rather, she said that she was merely repeating to Dr. Barron what Erin had told her had occurred.

During his closing argument, respondent's counsel argued that the state had failed to meet its burden of proving that respondent's touching of Erin was intentional or that it had been done for the purposes of sexual gratification. With respect to the issue of intentional touching, respondent argued that the evidence was insufficient because no one had testified that they had

---

[2] The reason for Molly's meeting with Dr. Barron is not relevant to this appeal.

seen respondent's hand touch Erin and that it could have been an accidental touching by Molly, who was sleeping on the same couch. Alternatively, respondent argued that, if a touching had occurred, it was at most innocent or accidental because there was no evidence that respondent rubbed, attempted to penetrate, moved his fingers, or said anything to Erin. The state countered that respondent had planned the touching for about two hours, and, from the totality of the circumstances, the trial justice could infer that respondent intentionally touched Erin for sexual gratification or arousal.

In her decision, the trial justice found Erin to be an honest and consistent witness who clearly testified that she was touched intentionally by respondent, and not by Molly accidentally. She also specifically found that Molly did, in fact, witness her brother touch Erin on the night in question. Regarding the elements in § 11-37-8.3 requiring that the "intentional touching" be "for the purpose of sexual arousal, gratification or assault," the trial justice found that the evidence was sufficient for her to reach that conclusion. Specifically, she stated that respondent was

> "a young man who came in twice for the same thing and succeeded the second time. Oh, yes, I believe that. I believe he was standing over [Erin] the first time and if she hadn't woken up and said get out of here, go away, a touching might have occurred on that occasion. That was his plan, to touch her. So he came in for the second time and he did that. That was his plan, to touch her genital area. Not because he was curious, not because this was an accident, not because he meant to put the sign of the cross on her forehead and put his hand on her crotch instead. He came in under that blanket, under her shorts to touch her genital area because it gratified him. That was his plan.
>
> "* * * This is a boy who, well, maybe he was about fourteen or fifteen years old himself at the time, and wanting to experience some sort of sexual gratification by touching this young lady's genital area. It was purposeful. That was his intent. He had a plan. He executed that plan on the second attempt and this Court believes the State has met each and every element of second degree child

molestation and this Court finds the Respondent delinquent."

At the sentencing hearing, the trial justice indicated that she "had some very serious concerns regarding [respondent's] behaviors and the actual act for which he was charged and found delinquent" and ordered respondent to register as a sex offender. The trial justice declined respondent's request to stay execution of registration, finding that "presently * * * he has had a sexual offender evaluation, that he has been found to be a moderate to high risk of behavior and I find that the statute requires registration and he shall register as a sex offender." The respondent timely appealed to this Court.

## 2

### Standard of Review

When reviewing an appeal from an adjudication of delinquency, this Court reviews the record to determine "whether legally competent evidence exists therein to support the findings made by the Family Court trial justice." In re Malik D., 730 A.2d 1070, 1072 (R.I. 1999). Importantly, the "factual findings of a trial justice sitting without a jury are granted an extremely deferential standard of review." State v. Gianquitti, 22 A.3d 1161, 1165 (R.I. 2011). For that reason, we will not upset the trial justice's findings unless respondent establishes that she "overlooked or misconceived material evidence or was otherwise clearly wrong." In re David G., 741 A.2d 863, 865 (R.I. 1999).

## 3

### Analysis

The sole issue to be decided is whether legally sufficient evidence existed to support the finding that respondent was delinquent because his actions were motivated by sexual arousal or

gratification.[3] The Family Court justice found that respondent was delinquent because he committed an offense that, if committed by an adult, would constitute second-degree child molestation sexual assault in violation of § 11-37-8.3. Section 11-37-8.3 says that "[a] person is guilty of a second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under." Section 11-37-1(7) defines "[s]exual contact" as "[t]he intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault." The respondent argues that the trial justice was clearly wrong because she failed to account for his youth, arguing that this "one-time touch—though misguided—was most likely a product of age-appropriate curiosity." A curiosity, he argues, that "often revolves around the opposite sex and is distinct from pleasure-seeking gratification." We do not agree.

To support his argument, respondent cites to State v. Brown, 586 A.2d 1085, 1087-89 (R.I. 1991), in which we held that a single incident of a momentary touch of a child's vagina on the outside of a child's clothing, where the defendant did not move his hand or fingers and no words were spoken, could not be reasonably construed as having been done for sexual gratification. It is true that both Brown and this case involve a brief, momentary touching where fingers did not move and words were not spoken, but the similarity ends there. Unlike the defendant in Brown, respondent entered the room twice during the middle of the night while Erin slept, and on the second occasion he did not just reach under her blanket—he reached into her shorts so that he could touch her vagina through her underwear.

---

[3] On appeal, respondent does not contest the Family Court's finding that he reached under Erin's shorts and touched her vagina over her underwear.

In seeking to mitigate this fact, respondent compares his actions to those of the defendants in State v. Tracy, 816 A.2d 1275 (R.I. 2003) (mem.) and State v. Hammond, 733 A.2d 727 (R.I. 1999) (mem.). In Tracy, 816 A.2d at 1276-77, there was evidence that the adult defendant fondled the ten-year-old victim's pelvic region under her underwear in a circular motion and squeezed her buttocks. And in Hammond, 733 A.2d at 729, the defendant pulled down his daughter's pants, pulled up her leg, put his hand between her legs for about five minutes, and then warned her not to tell anyone about the incident, or else she would "really get it if she did tell." The fact that the conduct in those cases might have been more egregious than the actions of this respondent does nothing to undermine the trial justice's finding that he touched Erin for the purposes of sexual gratification in violation of § 11-37-8.3.

The respondent next directs us to cases in other jurisdictions that illustrate the difficulty of comparing the relative behavior of children and adults. We agree with the respondent that it is not always permissible to "impute the same intent into a child's action that one could reasonably impute into the actions of an adult" and that determining the intent of sexual gratification in minors must be determined on a case-by-case basis. In re A.J.H., 568 N.E.2d 964, 968 (Ill. App. Ct. 1991). However, the state's evidence that he entered the room on two occasions and placed his fingers over Erin's vagina is not in dispute. In In re Matthew K., 823 N.E.2d 252, 253-54, 254 (Ill. App. Ct. 2005), the defendant used the uncontroverted testimony of a child psychiatrist to establish that the defendant's touching of the victim was "simply a brief, socially inept * * * behavior that occurred." But, in this case the trial justice, from the evidence brought forth at trial, made a reasonable inference that Kyle touched Erin for his sexual gratification and there is simply no foundation for us to hold that she was clearly wrong when she made her finding. The record is devoid of any evidence that supports the respondent's

argument that his actions were merely curiosity-satisfying and not intended for sexual gratification or arousal.

## Conclusion

For the reasons set forth in this opinion, we affirm the adjudication of the Family Court. The papers in this case may be remanded to that tribunal.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      In re Kyle A.

**CASE NOS:**      No. 2014-307-Appeal.
            (13-988-1)

**COURT:**      Supreme Court

**DATE OPINION FILED:**      April 15, 2016

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**      Providence County Family Court

**JUDGE FROM LOWER COURT**:

      Associate Justice Kathleen A. Voccola

**ATTORNEYS ON APPEAL:**

      For Petitioner:  Christopher R. Bush
                    Department of Attorney General

      For Respondent:  Angela M. Yingling
                    Office of the Public Defender