# Illinois Official Reports

## Appellate Court

---

### *Byrne v. Hayes Beer Distributing Co.*, 2018 IL App (1st) 172612

---

| | |
|---|---|
| Appellate Court Caption | JAMES BYRNE, on Behalf of Himself and All Employees of Hayes Beer Distribution Company, Plaintiffs-Appellees, v. HAYES BEER DISTRIBUTING COMPANY, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-17-2612 |
| Filed | December 4, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-8764; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Edward W. Bergmann, Louis S. Chronowski, Christopher W. Kelleher, and Emily C. Kesler, of Seyfarth Shaw LLP, of Chicago, for appellant.<br><br>Robert Cervone and Ronald M. Willis, of Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, of Chicago, for appellees. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justice Lavin concurred in the judgment and opinion.<br>Presiding Justice Mason specially concurred, with opinion. |

**OPINION**

¶ 1    Hayes Beer Distributing Company (Hayes) supplies beer and other beverages to retail stores. Hayes adopted a policy of deducting money from its delivery drivers' commissions for beer that stayed on the shelf too long and became stale. James Byrne, a delivery driver, filed a complaint with the Illinois Department of Labor (Department) arguing that Hayes's "stale beer" policy violates section 9 of the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/9 (West 2016)), which requires that employees agree to any wage deductions in writing at the time the deduction is made. The Department found that the underlying issue arose out of an interpretation of the parties' collective bargaining agreement (CBA), and thus, the Department did not have jurisdiction, as it was preempted by section 301 of the federal Labor Management Relations Act (LMRA) (29 U.S.C. § 185 (2012)).

¶ 2    Byrne filed a complaint for administrative review in the circuit court of Cook County. The court granted Byrne's petition, finding the Department's decision to dismiss his claim was "clearly erroneous," because the underlying issue involved the legality of the wage reduction under the Wage Act, which did not require interpreting the CBA, and thus, was not preempted by section 301. Hayes filed an interlocutory appeal arguing (i) Byrne's wage claim does not require interpretation of the CBA, and (ii) Illinois law allows employees to contract around the no-deduction provision in the Wage Act.

¶ 3    We agree with the circuit court and affirm the court's order remanding the case for additional proceedings.

¶ 4                                        Background

¶ 5    Hayes, a beer distribution company, and the International Brotherhood of Teamsters Union No. 703 entered into a CBA covering delivery drivers. Article 12 of the CBA describes the drivers' commission pay structure. Hayes compensates drivers for each case delivered to stops on a driver's route and provides for deductions from commission payments for a driver accepting a bad check or counterfeit currency or a cash shortage.

¶ 6    Article 13 of the CBA states that a driver's duties include "[c]hecking all code dates and rotating all stock to insure product freshness." According to Hayes, the Illinois Liquor Control Commission regulations mandate rotating products, as do its own distribution agreements with brewers. Those agreements provide that Hayes cannot sell outdated consumable products. To monitor driver rotation of product, Hayes's outside sales representatives periodically check the expiration date on the beer bottles and cans at retail customer sites. When a sales representative discovers beer has remained on the shelf beyond the expiration date, the sales representative removes the beer from the shelf and gives the driver who services that location a report detailing the date of discovery and the quantity of stale beer. Hayes considers the removal of stale beer a return of the product and deducts the cost of the stale beer from the driver's wages for the pay period in which it discovered the stale beer. If the driver removes the beer from the shelf before the expiration date and returns it to the distribution center, Hayes does not deduct the cost from the driver's wages.

¶ 7    Hayes says its policy of deducting commission for stale beer is a reasonable measure to comply with the Illinois Liquor Control Commission regulations, which are intended to ensure "the health, safety, and welfare of the People of the State of Illinois." Hayes also contends stale

beer deductions are rare and average between 1 to 2% of a driver's gross wages, with an average charge of $15 per case. According to Hayes, drivers are aware of the amounts deducted, and the CBA contains a grievance procedure should an employee not agree with the deduction policy or a deduction. Nothing in the CBA directly addresses adjustments for stale beer, and nothing in the record shows that Byrne or other drivers consented to Hayes deducting money from their pay for the cost of the stale beer. Hayes does not claim that drivers signed a valid assignment or wage deduction order or otherwise voluntarily consented to the pay deductions.

¶ 8      The Department notified Hayes it had received a complaint that Hayes was not complying with the Minimum Wage Law (820 ILCS 105/1 *et seq.* (West 2016)) and that the Department would be investigating Hayes's pay practices. The complaint, which had been filed by Teamsters Local No. 703, alleged that Hayes's deductions from drivers' commissions, especially the deduction for stale beer, often resulted in hourly income for drivers of less than that required by the Minimum Wage Law.

¶ 9      Thereafter, the Department notified Hayes's attorney it had transferred the investigation to the wage claim specialist in the Fair Labor Standards Division. About a week later, James Byrne, a delivery driver for Hayes, filed a separate claim with the Department on behalf of himself and similarly situated employees, alleging Hayes's practice of deducting money from employees' pay for stale beer violated section 9 of the Wage Act (820 ILCS 115/9 (West 2016)), which requires employees agree to a wage deduction in writing at the time of the deduction.

¶ 10      A notice of noncompliance with the Minimum Wage Law ordered Hayes to pay $64,451.65 in wages, the stale beer deductions. Hayes requested a review arguing (i) it paid drivers covered by the audit above the minimum wage, even after stale beer deductions, (ii) the motor vehicle exemption of the Minimum Wage Law exempts its drivers, and (iii) section 301 of the LMRA preempts application of the Minimum Wage Law to the deduction practice.

¶ 11      An administrative law judge's order held Hayes had not violated the Minimum Wage Law and dismissed the investigation, making Hayes's request for review moot. The order stated, however, that the question of whether Hayes may make deductions for stale beer, which "contains a unionized atmosphere and is governed by a collective bargaining agreement" remained open and would move forward under the Wage Act.

¶ 12      The Department then dismissed Byrne's Wage Act claim, finding that the Department did not have jurisdiction to determine whether drivers gave a voluntary deduction because doing so would require interpreting the CBA, thereby intruding into an area preempted by section 301 of the LMRA (29 U.S.C. § 185 (2012)).

¶ 13      Byrne filed a complaint for administrative review of the Department's dismissal of his claim, which the circuit court granted, remanding for further proceedings before the Department. The court acknowledged the principle stated in *Atchley v. Heritage Cable Vision Associates*, that "Section 301 preempts claims directly founded on or 'substantially dependent on analysis of a collective-bargaining agreement.' " 101 F.3d 495, 498 (7th Cir. 1996) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). The court concluded that "[t]his is plainly not such a case."

¶ 14      The court also observed that even if it was to interpret the CBA, it could not ignore the employees' alleged statutory right to consent to pay deductions. "Simply put, the claim here is not founded upon the parties' collective bargaining agreement, and the same need not be

interpreted to resolve the matter." Hayes filed a petition for leave to file an interlocutory appeal under Illinois Supreme Court Rule 306(a)(6) (eff. July 1, 2017).

¶ 15                                                    Analysis

¶ 16                                             Standard of Review

¶ 17        Both parties assert we should review the court's decision for an abuse of discretion. But, under the administrative review law, we review the decision of the agency, not the decision of the circuit court. 735 ILCS 5/3-101 (West 2016); *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 385-86 (2010). And the standard of review of an administrative agency decision depends on whether the question presented is one of fact, one of law, or a mixed question of fact and law. *All American Title Agency, LLC v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 113400, ¶ 26. We review factual questions under the manifest weight of the evidence standard and review questions of law *de novo*. *Danigeles v. Illinois Department of Financial & Professional Regulation*, 2015 IL App (1st) 142622, ¶ 69. We review mixed questions of law and fact under the clearly erroneous standard of review. *All American Title Agency, LLC*, 2013 IL App (1st) 113400, ¶ 26. "A decision will be deemed clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.*

¶ 18        The administrative law judge's order dismissing Byrne's complaint involved mixed questions of law and fact, which we review for clear error. Hayes contends the ALJ order was clearly erroneous because (i) Byrne's claim involves interpreting the CBA, which triggers preemption under section 301 of the LMRA, and (ii) Illinois law permits employees to contract around the no-deduction provision in the Wage Act.

¶ 19                                             LMRA Preemption

¶ 20        Section 301 of the LMRA grants federal district courts exclusive jurisdiction over a state law claim when resolution depends on interpreting the terms of a CBA. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11 (1985). This promotes consistent resolution of labor disputes by authorizing federal courts to forge a body of federal law for the enforcement of CBAs. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988); see also *Loewen Group International, Inc. v. Haberichter*, 65 F.3d 1417, 1421 (7th Cir. 1995).

¶ 21        The LMRA does not automatically preempt state law claims just because the plaintiff is a union member and employed under a CBA. Whether section 301 preempts a state law claim entails a "case-by-case factual analysis." *In re Bentz Metal Products Co.*, 253 F.3d 283, 285 (7th Cir. 2001). "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a [section] 301 claim [citation], or dismissed as pre-empted by federal labor-contract law." *Lueck*, 471 U.S. at 220. Claims and defenses must be considered in determining whether resolution of a state law claim requires construing the CBA. *Gelb v. Air Con Refrigeration & Heating, Inc.*, 356 Ill. App. 3d 686, 693 (2005).

¶ 22        The court cited *Carletto v. Quantum Foods, Inc.*, No. 1-05-3163 (2006) (unpublished order under Illinois Supreme Court Rule 23), in finding that Byrne's claim was not preempted by section 301. And both parties cite *Carletto* before us. Illinois Supreme Court Rule 23 states that an unpublished order "is not precedential and may not be cited by any party except to

support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." Ill. S. Ct. R. 23(e)(1) (eff. Apr. 1, 2018); see also *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 17 (citation to unpublished order "strictly prohibited"). The rule places no similar limitations on the trial court. Some divisions of the appellate court have criticized trial courts for citing Rule 23 orders (see, *e.g.*, *People v. Schambow*, 305 Ill. App. 3d 763, 766 (1999)), yet nothing in the rule expressly prohibits a trial court or the appellate court from adopting the reasoning of an unpublished order. Irrespective of the propriety of the trial court relying on *Carletto*, the court's analysis was sound, and our analysis would be much the same.

¶ 23     In *Carletto*, the plaintiffs, members of a union and parties to a CBA with their employer, Quantum Foods, Inc. (Quantum), filed a class action complaint alleging, in part, that Quantum violated the Minimum Wage Law and the Wage Act by refusing to pay them for the time spent donning and doffing required safety equipment and work clothes. The appellate court found that the Minimum Wage Law and the Wage Act were preempted because the finder of fact would have to interpret the CBA to determine whether donning and doffing of equipment and clothes constituted "work" within the meaning of the CBA and the amount of wages the employer would owe to plaintiffs.

¶ 24     In finding that Byrne's claims were not preempted, the trial court noted that the *Carletto* court held that a state law claim is preempted only "when a claim is directly founded on the rights created" by the CBA and "resolution of the state law claim" requires interpretation of the CBA. This analysis mirrors the two-step approach a number of federal courts, relying on Supreme Court precedent, have adopted. Under this approach, a court must first determine if the state law claim involves a right created by a statute or the CBA. See *Lingle*, 486 U.S. at 409-10 & n.10 (citing *Williams*, 482 U.S. at 394-95). If the CBA confers the right, the claim is preempted. If the right exists by statute and independent of the CBA, we then determine if the claim is "substantially dependent" on the CBA. *Id.* If the claim involves interpreting the CBA, preemption occurs. If the claim involves merely looking to or referring to the CBA or does not require reference to the CBA, preemption does not occur. *Id.*

¶ 25     Byrne's claim involves a right conferred by statute, namely, section 9 of the Wage Act, which requires that employees agree to any wage deductions in writing at the time the deduction is made. 820 ILCS 115/9 (West 2016). Thus, because section 9 of the Wage Act directly addresses the drivers' rights to consent to a deduction at the time it is made, the preemption question turns on whether his claim is "substantially dependent" on, or requires interpretation of, the CBA.

¶ 26     Hayes acknowledges the CBA does not expressly address wage deductions for stale beer but asserts that the practice has become an "implied" term. See *Atchley*, 101 F.3d at 499 ("if it is necessary to interpret express or implied terms of a CBA, a state law claim is completely preempted by [section] 301, the claim is deemed federal in nature"). Specifically, Hayes asserts (i) it has been making stale beer deductions for years with no objections from drivers or the union, so the practice has become the "law of the shop," and (ii) the deductions are related to the drivers' responsibility under article 13, section 1(g) of the CBA to "[c]heck[ ] all code dates and rotat[e] all stock to insure product freshness." Hayes argues it enforces that provision through deductions in commissions for stale beer. Thus, any assessment of whether drivers consented to the deductions requires an interpretation of the CBA and the parties' past practices regarding enforcement of that provision.

¶ 27    Conversely, Byrne contends his claim regarding wage deductions arises from rights granted by section 9 of the Wage Act (820 ILCS 115/9 (West 2016)), not from the CBA. Further, he contends his Wage Act claim neither requires interpreting, nor is "substantially dependent" on the CBA and, therefore, is not preempted by the LMRA.

¶ 28    First, we disagree with Hayes's contention that the stale beer deduction has become part of the CBA. Hayes cites no cases, and we have found none, where a court has found that a state law granting employees rights is preempted by a practice the employer implements and deems to be the "law of the shop."

¶ 29    Hayes next contends Byrne's claim is not purely a question of state law and requires an interpretation of the CBA because the wage deductions are used to enforce drivers' duties to timely rotate products, as spelled out in article 13 of the CBA. Hayes cites two cases, *Gelb*, 356 Ill. App. 3d 686, and *Kostecki v. Dominick's Finer Foods, Inc. of Illinois*, 361 Ill. App. 3d 362, 368 (2005), to support its argument. In *Gelb*, employees alleged their employers violated the Minimum Wage Law by failing to pay time-and-one-half for overtime hours worked. *Gelb*, 356 Ill. App. 3d at 690. The employees argued that only an examination of the relevant payroll records and a reading of the law were needed to resolve the claim. *Id.* at 692. The employers argued that "the means by which they paid overtime wages were governed by the [CBA]," therefore preempting the claim. *Id.* Specifically, the CBA stated regular overtime pay for the first four hours of overtime and after that, as well as on holidays, employees would receive double the regular rate. *Id.* at 693. Because the formula to calculate overtime appeared in the CBA and because the agreement "provided for overtime compensation that, in some instances, exceeded the minimum rate" under the Minimum Wage Law, the claims were preempted by federal labor laws. *Id.* at 694.

¶ 30    In *Kostecki*, the plaintiffs alleged their employer violated the Minimum Wage Law by requiring them to work "off the clock," thereby amounting to overtime without pay. *Kostecki*, 361 Ill. App. 3d at 365. The plaintiffs also alleged defendants violated the Wage Act by failing to pay overtime and other earnings. *Id.* at 365-66. Following the reasoning of *Gelb*, this court held that the plaintiffs' claims about overtime wages arose out of the CBA, because it set forth the specific rates of overtime pay that were, in some instances, greater than those provided by the Minimum Wage Law. *Id.* at 371. The CBA also described how to calculate overtime pay. *Id.* Also, the plaintiffs' Wage Act claims arose from the CBA because the agreement mandated adequate payroll procedures and indicated how employees were to be paid. *Id.* Thus, a fact finder would have to interpret the terms of the CBA to resolve the plaintiffs' claims. *Id.*

¶ 31    *Gelb* and *Kostecki* involved claims of violation of Illinois overtime requirements, and the labor agreements in both cases contained specific provisions about when overtime had to be paid. Hence, the finder of fact would need to interpret the agreements to determine wither the plaintiffs were owed overtime compensation.

¶ 32    But Byrne's claim that the Wage Act prevents Hayes from deducting money for stale beer without consent does not require reference to or an interpretation of the CBA. His claims derive solely out of section 9 of the Wage Act (820 ILCS 115/9 (West 2016)), which mandates that employees agree to any wage deductions in writing at the time the deduction is made. Further, although the CBA requires drivers to rotate stock to ensure product freshness, the CBA could have but does not address how that provision is to be enforced or, assuming that money can be deducted from the drivers' commission, the manner in which those deductions

are to be made. Those questions fall squarely under section 9 of the Wage Act, and they exist independently of and do not require interpretation of any provision of the CBA.

¶ 33 More analogous is *Daniels v. Board of Education of the City of Chicago*, 277 Ill. App. 3d 968 (1996). In *Daniels*, the plaintiffs, who had been laid off, sued to recover the value of accrued and unused vacation days. *Id.* at 968. The claim, brought under section 5 of the Wage Act (820 ILCS 115/5 (West 1996)), states that "[u]nless otherwise provided in a collective bargaining agreement," if an employment contract provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time, the monetary equivalent of all earned vacation must be paid to the employee as part of final compensation. *Daniels*, 277 Ill. App. 3d at 969. The defendant-employer argued preemption of the employees' claim because the CBA contained a provision for dealing with how employees earned vacation pay and thus the CBA had to be interpreted to resolve the vacation pay issue. *Id.* at 970. The court agreed and dismissed the complaint, as the plaintiffs had not first exhausted their remedies under their CBA, which contained a section outlining how vacation days accumulate. *Id.*

¶ 34 The appellate court reversed, finding that the employees' compensation claim relating to accumulated vacation days did not arise entirely under the applicable CBA, as the CBA was silent on compensation for accrued vacation days on separation from employment. *Id.* at 973-94. The Wage Act, however, directly addressed the plaintiffs' issue, requiring compensation for accumulated vacation days. *Id.* at 973.

¶ 35 Similarly, the CBA describes the drivers' duties to rotate product to maintain freshness but does not describe how that provision will be enforced and whether Hayes can deduct from drivers' compensation for stale beer. In short, because Byrne's claim arises under section 9 of the Wage Act and nothing in the CBA addresses the consequences of failing to rotate the beer, there is nothing requiring interpretation of the CBA.

¶ 36 Hayes also contends the court ignored the parties' grievance procedure laid out in the CBA. Hayes asserts that, because the CBA provides for arbitration when disputes arise, an arbitrator, not a court, should decide the question. But as noted, this dispute did not arise under the CBA. The Wage Act directly address whether Hayes could make deductions to drivers' wages without their consent. As the *Daniels* court stated, when a dispute does not entirely arise under a CBA, it would be "fruitless" to require a plaintiff to file a grievance and exhaust contractual remedies. *Id.* at 974.

¶ 37 Contracting Around the Wage Act

¶ 38 Hayes contends the court abused its discretion in failing to consider that the parties contracted around the no-deduction provision in the Wage Act. Specifically, Hayes points to the court's statement that "even if the CBA could be interpreted to allow Hayes to hold employees monetarily accountable for stale beer, it must nonetheless fully comply with the Wage Act." Hayes argues the Department and courts have explicitly indicated that an employer and a union may agree to provisions in a CBA that violate state laws. For support, Hayes relies on *Mondelez Global LLC v. International Ass'n of Machinists & Aerospace Workers District No. 8, AFL-CIO*, No. 17 C 840, 2017 WL 3189476 (N.D. Ill. July 27, 2017). In *Mondelez*, an employer decided to prohibit union employees from working 7 consecutive days without a 24-hour period of rest. The employer determined that the prohibition was consistent with the One Day Rest in Seven Act (820 ILCS 140/1 *et seq.* (West 2014)). Union

employees filed a grievance protesting the employer's decision to limit their ability to work and gain overtime. Eventually, the parties submitted the grievance to binding arbitration, and the arbitrator ruled in favor of the union, finding that a binding past practice had developed between the parties, which allowed employees to volunteer to work 7 consecutive days without a 24-hour period of rest. *Mondelez*, 2017 WL 3189476, at *1.

¶ 39 The employer filed a claim in federal district court seeking to vacate the arbitrator's award, and the union counterclaimed seeking to confirm the award. Both parties moved for summary judgment; the court granted the union's motion and denied the employer's motion. *Id.* at *1, *4. Hayes mischaracterizes the court's holding, arguing that it found that no public policy existed that would require compliance with the One Day Rest in Seven Act when the CBA and past practice authorized conduct that would violate it. Instead, the court concluded that "ODRISA itself merely contains permissive language and expressly mandates that an employer 'allow' employees the 24-hour period of rest. *** Nothing in ODRISA prohibits an employee from voluntarily choosing to forego the 24-hour period of rest. As [Mondelez Global] itself also concedes, the ODRISA and regulations specifically contemplate exceptions, allowing the [Department] to issue permits to employees authorizing them to disregard the 24-hour period of rest requirement." *Id.* at *3.

¶ 40 Here, the CBA does not expressly permit Hayes to make deductions for stale beer, and the language of section 9 of the Wage Act, unlike the language of the One Day Rest in Seven Act, is mandatory, not permissive. Section 9 states that "deductions by employers from wages or final compensation are prohibited unless *** made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9 (West 2016). Thus, *Mondelez* does not support Hayes's argument.

¶ 41 Moreover, courts have generally held that parties to a labor agreement may not contract for something that is illegal under state law. As the United States Supreme Court held, "Clearly, [section] 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." *Lueck*, 471 U.S. at 212; see also *Gonzalez v. Prestress Engineering Corp.*, 115 Ill. 2d 1, 10 (1986) (quoting *Lueck*, 471 U.S. at 212).

¶ 42 We note that, although the parties could not have contracted around the requirements of the Wage Act, they could have included a provision in the CBA detailing procedures for handling stale beer. The CBA provides that drivers must rotate the beer to ensure freshness but fails to specify the consequences, if any, if the beer goes stale. The parties could have negotiated penalties for drivers for failing to timely remove stale beer from shelves, and that provision could have been made part of the CBA. Instead, Hayes unilaterally adopted a policy of deducting wages without the driver's written consent in violation of section 9 of the Wage Act. Thus, we affirm the court's decision to reverse the Department's dismissal and remand for further proceedings.

¶ 43 Affirmed.

¶ 44 PRESIDING JUSTICE MASON, specially concurring:

¶ 45 I concur in the result in this case. I write specially to express my disagreement with the majority's citation and extensive discussion of a Rule 23 order.

¶ 46 Rule 23 provides that orders entered under subparts (b) or (c) are "not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." Ill. S. Ct. R. 23(e)(1) (eff. Apr. 1, 2018). The majority construes the rule as allowing the court to discuss the reasoning of a Rule 23 order it finds "persuasive," just as the court can look to other nonprecedential authorities such as law review articles or treatises. See *People ex rel. Webb v. Wortham*, 2018 IL App (2d) 170445, ¶ 27.

¶ 47 This interpretation is at odds with our court's longstanding refusal to consider orders entered under Rule 23(b) whether cited by parties or by trial courts. See, *e.g.*, *People v. Wilder*, 356 Ill. App. 3d 712, 718-19 (2005) (reminding defendant, relying on order issued in codefendant's appeal, that Rule 23 orders are not precedential and may not be cited other than for purposes specified in rule); *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 998 (2004) (finding defendant improperly relied on Rule 23 order and refusing to consider it); *Valenti v. Mitsubishi Motor Sales of America, Inc.*, 332 Ill. App. 3d 969, 972 (2002) (striking references to Rule 23 order in defendant's brief); *Fedanzo v. City of Chicago*, 333 Ill. App. 3d 339, 350 (2002) (declining to address Rule 23 order on which plaintiff relied); *In re Donald R.*, 343 Ill. App. 3d 237, 244 (2003) (admonishing trial court for stating it was bound by Rule 23 order in unrelated case); *People v. Schambow*, 305 Ill. App. 3d 763, 766 (1999) (same); *Price v. Hickory Point Bank & Trust*, 362 Ill. App. 3d 1211, 1221 (2006) (finding that trial court erred in allowing defendant to cite Rule 23 order).

¶ 48 I do not understand the majority to be suggesting that the rule binds only parties and not the court. The unfairness of allowing a court to cite "persuasive" Rule 23 orders, while prohibiting the parties from doing the same is obvious. In any event, we can embrace the reasoning of a Rule 23 order without citing it. Here, we could rely on the same authorities and employ the same reasoning as *Carletto* without referring to that case at all.

¶ 49 When we construe the rule to allow citation and discussion of Rule 23 orders as "persuasive" authority, we circumvent the rule's proscriptions as surely as if we had disregarded the distinction altogether, and we blur what has heretofore been a bright line between decisions of this court that may be cited and those that may not. How can we criticize parties who in the future, following this court's lead, discuss Rule 23 orders for their "persuasive" reasoning when we do it ourselves? And if a party believes the reasoning of a Rule 23 order is "persuasive," but we disagree, do we (i) pretend that the order was not cited and refrain from mentioning it, (ii) address the order and explain why we do not find its reasoning "persuasive," or (iii) admonish the party for violating Rule 23?

¶ 50 While the continued viability of the proscription against citation of Rule 23 orders has been questioned given that all of our decisions are available on the World Wide Web, our supreme court has recently declined to amend the rule to abolish the distinction between precedential opinions, on the one hand, and nonprecedential Rule 23 orders, which may not be cited except as provided under the rule, and we should honor that decision by enforcing the rule as written.